# Illinois Official Reports

## Supreme Court

---

### *Johnson v. Department of State Police*, 2020 IL 124213

---

| | |
|---|---|
| Caption in Supreme Court: | SHAWNA JOHNSON, Appellee, v. THE DEPARTMENT OF STATE POLICE, Appellant. |
| Docket No. | 124213 |
| Filed | January 24, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Wabash County, the Hon. Larry D. Dunn, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |
| Counsel on Appeal | Kwame Raoul, Attorney General, of Springfield (Jane Elinor Notz, Solicitor General, and Katelin B. Buell, Assistant Attorney General, of Chicago, of counsel), for appellant. |
| | Rebecca M. Blakeslee, of Lawrenceville, and David D. Jensen, of David Jensen PLLC, of New York, New York, for appellee. |
| Justices | JUSTICE THEIS delivered the judgment of the court, with opinion. |
| | Chief Justice Burke and Justices Thomas, Kilbride, Garman, Karmeier, and Neville concurred in the judgment and opinion. |

**OPINION**

¶ 1        This direct appeal involves the interplay of state and federal firearms laws. The Department of State Police (Department) revoked Shawna Johnson's Firearm Owner's Identification (FOID) card under the Firearm Owners Identification Card Act (FOID Card Act) (430 ILCS 65/8(n) (West 2012)) due to her conviction for a misdemeanor crime involving domestic violence. That conviction prohibited her from possessing firearms under federal law. Johnson brought a petition in the circuit court of Wabash County seeking relief from the Department's determination. The circuit court held that section 922(g)(9) of the federal Gun Control Act of 1968 (Gun Control Act), as amended (18 U.S.C. § 922(g)(9) (2006)), and several provisions of the FOID Card Act (430 ILCS 65/8(n), 10(b), 10(c)(4) (West 2012)), which incorporate that federal statute, were unconstitutional as applied to Johnson. The circuit court ordered the Department to reinstate and reissue Johnson's FOID card. The Department appealed directly to this court as a matter of right. Ill. S. Ct. R. 302(a) (eff. Oct. 4, 2011). For the following reasons, we affirm the judgment of the circuit court, albeit on different grounds, and we vacate the circuit court's findings that the state and federal statutes are unconstitutional as applied to Johnson.

¶ 2                                                BACKGROUND

¶ 3        In June 2001, Johnson pleaded guilty to misdemeanor battery (720 ILCS 5/12-3(a)(1) (West 2000)) after striking her then-husband in the head, causing bodily harm.[1] She was sentenced to two days in jail (time served in pretrial detention), a fine, and a one-year term of conditional discharge.

¶ 4        In 2010, Johnson applied for and received a FOID card after answering "no" to the question of whether she had previously been convicted of a crime of domestic violence. She thought, based on advice from the local sheriff, that her conviction for misdemeanor battery did not qualify as a crime of domestic violence. Thereafter, she was denied the right to purchase a handgun because of her 2001 conviction.

¶ 5        The Department subsequently revoked Johnson's FOID card pursuant to section 8(n) of the FOID Card Act (430 ILCS 65/8(n) (West 2012)), which authorizes the Department to revoke a FOID card where the person is "prohibited from acquiring or possessing firearms or firearm ammunition by *** federal law." The Department informed Johnson that section 922(g)(9) of the federal Gun Control Act was the basis for the federal prohibition. Johnson subsequently sought a pardon from the Governor in 2012, but that request was denied.

¶ 6        In August 2013, Johnson filed a petition in the circuit court seeking relief from the Department's revocation of her FOID card under section 10 of the FOID Card Act. Thereafter, the Department filed a motion for summary judgment arguing, *inter alia*, that Johnson's requested relief would be contrary to the public interest and would violate federal law and that the FOID Card Act prohibited the circuit court from ordering the issuance of a FOID card to anyone prohibited by federal law from acquiring or possessing firearms or ammunition. In response, Johnson argued, *inter alia*, that granting her relief under the FOID Card Act would

_____

[1]Although the factual basis for the plea does not include the existence of a domestic relationship, Johnson admits such a relationship for purposes of these proceedings.

- 2 -

not be contrary to federal law because she was entitled to the "civil rights restored" exemption under federal law. The circuit court ultimately ruled that it could not grant Johnson relief by compelling the Department to issue her a card under the current construction of the FOID Card Act, but the court granted her leave to replead to assert her constitutional claims.

¶ 7 In her second amended petition, Johnson asserted that the perpetual ban on her ability to possess firearms under the current state law framework violated her second amendment right by permanently denying her firearms rights. She argued that she readily met the applicable standards set forth in sections 10(c)(1)-(3) of the FOID Card Act because the circumstances of her conviction, criminal history, and reputation indicate that she "will not be likely to act in a manner dangerous to public safety" and, further, that "relief would not be contrary to the public interest." 430 ILCS 65/10(c)(1)-(3) (West 2012). She maintained that her ongoing inability to obtain relief due to the federal disability made the revocation of her FOID card unconstitutional as applied to her.

¶ 8 The case proceeded to an evidentiary hearing, at which the circuit court considered documentary evidence, various stipulations of fact, and testimony from multiple witnesses in support of Johnson's petition. These witnesses included Johnson, her current husband, and several law enforcement personnel from the community who knew Johnson personally. The Department had an opportunity to cross-examine those witnesses.

¶ 9 After taking the matter under advisement, the circuit court granted Johnson relief. Initially, the court found that the statutory factors set forth under sections 10(c)(1)-(3) strongly supported granting Johnson's petition and reinstating her FOID card. Specifically, the court found that Johnson had not committed a forcible felony within 20 years, that her criminal history and her reputation indicated that she was not likely to act in a manner dangerous to public safety, and that granting relief was not contrary to the public interest. But for her federal disability, as incorporated into section 10(c)(4) of the FOID Card Act, she would have been eligible to have her FOID card reinstated.

¶ 10 The circuit court ruled that substantial justice had not been done and that, due to the perpetual denial of Johnson's right to possess and use firearms, section 922(g)(9) of the federal Gun Control Act; sections 8(n), 10(b), and (c)(4) of the FOID Card Act; and title 20, section 1230.20, of the Illinois Administrative Code (20 Ill. Adm. Code 1230.20 (2013)) violated Johnson's rights under the second and fourteenth amendments of the United States Constitution, as applied to the specific facts and circumstances of her case. Accordingly, the court ordered the Director of State Police to reinstate and reissue a FOID card to Johnson. The Department appealed the circuit court's order directly to this court. Ill. S. Ct. R. 302(a) (eff. Oct. 4, 2011).

¶ 11                                                    ANALYSIS

¶ 12 By all accounts Johnson's FOID card would have been reinstated under Illinois law but for the provisions in the FOID Card Act that prohibit a court from granting relief when it would be contrary to federal law. 430 ILCS 65/10(b), (c)(4) (West 2012) (as amended by Pub. Act 97-1131 (eff. Jan. 1, 2013) (adding 430 ILCS 65/10(c)(4))). Johnson contends that under a proper construction of the state and federal statutes the federal prohibition is no longer applicable. Specifically, she argues that the restoration of her right to keep and bear arms under Illinois's regulatory scheme is a restoration of her "civil rights," as that term is applied under

- 3 -

the federal Gun Control Act, so that she falls within the exception to the federal disability. And as a matter of constitutional avoidance, Johnson maintains that this court should first address this argument.

¶ 13    We are cognizant of the long-standing rule that "cases should be decided on nonconstitutional grounds whenever possible, reaching constitutional issues only as a last resort." *In re E.H.*, 224 Ill. 2d 172, 178 (2006). This principle has been applied even in cases where the court acquires jurisdiction because a constitutional question is involved. *People v. Waid*, 221 Ill. 2d 464, 473 (2006). Thus, we will look first to Johnson's nonconstitutional claim as a basis for upholding the trial court's judgment. Because questions related to the interpretation of a statute present issues of law, our review proceeds *de novo*. *People v. Manning*, 2018 IL 122081, ¶ 16.

¶ 14    We note that this court has not considered the precise issue that Johnson presents. In *Coram v. State*, 2013 IL 113867, this court interpreted the preamended version of the FOID Card Act. The lead opinion found that the prior version of the FOID Card Act permitted courts to override a federal disability, reasoning that a state's ability to restore firearm rights was necessarily implied by Congress. *Id.* ¶ 69. The specially concurring opinion found that, under the prior version of the FOID Card Act, there was no statutory bar from granting relief under section 10, which at that time did not incorporate federal law. *Id.* ¶¶ 100, 107 (Burke, J., specially concurring, joined by Freeman, J.).

¶ 15    To answer the question presented—whether granting Johnson relief would be contrary to federal law—we begin with a review of the state statutory framework and the interplay between state and federal law. We then consider whether Johnson's civil rights have been restored under the relevant federal statute, triggering an exception to the federal law.

¶ 16                                    *FOID Card Act*

¶ 17    Since 1967, Illinois law has provided that an individual must obtain a FOID card in order to acquire or possess a firearm. 430 ILCS 65/2(a)(1) (West 2018); 1967 Ill. Laws 2599. Under section 8 of the FOID Card Act, the Department is authorized to deny an application for or revoke a card based on certain disqualifying criteria, including a Department finding that the person "is prohibited from acquiring or possessing firearms or firearm ammunition by any Illinois State statute or by federal law." 430 ILCS 65/8(n) (West 2012). If not eligible, possessing a firearm without a FOID card is punishable as a Class 3 felony. *Id.* § 14. Thus, under Illinois law, certain disqualified individuals may lose their eligibility for a FOID card and, thereby, lose their right to acquire or possess a firearm.

¶ 18    Nevertheless, section 10 of the FOID Card Act provides a petitioner with an avenue to appeal and to seek an individualized hearing before the Director of State Police or the circuit court, depending on the nature of the prohibition, to restore eligibility for a FOID card. *Id.* § 10(a). Relevant here, the court is charged with determining whether "substantial justice has not been done." *Id.* § 10(b). If not, the court is authorized to direct the Department to issue a card. But the court "shall not issue the order if the petitioner is otherwise prohibited from obtaining, possessing, or using a firearm under federal law." *Id.*

¶ 19    To make the requisite showing for the court to grant relief, the applicant must establish
          "to the court's *** satisfaction that:
              ***

(1) The applicant has not been convicted of a forcible felony under the laws of this State or any other jurisdiction within 20 years of the applicant's application for a [FOID] Card, or at least 20 years have passed since the end of any period of imprisonment imposed in relation that conviction;

(2) the circumstances regarding a criminal conviction, where applicable, the applicant's criminal history and his reputation are such that the applicant will not be likely to act in a manner dangerous to public safety;

(3) granting relief would not be contrary to the public interest; and

(4) granting relief would not be contrary to federal law." 430 ILCS 65/10(c)(1)-(4) (West 2012).

It is undisputed that Johnson satisfied the first three criteria for relief after an evidentiary hearing. Thus, the focus of our inquiry is on the last condition—whether "granting relief would not be contrary to federal law." *Id.* § 10(c)(4). That condition was added to the FOID Card Act in 2013. See Pub. Act 97-1131, § 15 (eff. Jan. 1, 2013) (amending 430 ILCS 65/10(c)(4)).

¶ 20                                Applicable Federal Law

¶ 21    The Gun Control Act prohibits the shipping, transport, possession, and receipt of firearms and ammunition by any person "who has been convicted in any court of a misdemeanor crime of domestic violence." 18 U.S.C. § 922(g)(9) (2006). Congress enacted section 922(g)(9) in 1996 after recognizing that existing felon-in-possession laws "were not keeping firearms out of the hands of domestic abusers, because 'many people who engage in serious spousal or child abuse ultimately are not charged with or convicted of felonies.' " *United States v. Hayes*, 555 U.S. 415, 426 (2009) (quoting 142 Cong. Rec. 22,985 (1996) (statement of Sen. Lautenberg)).

¶ 22    A "misdemeanor crime of domestic violence" is defined as an offense that "is a misdemeanor under *** State *** law" and "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim." 18 U.S.C. § 921(a)(33)(A) (2006). Johnson's guilty plea qualified as a misdemeanor crime of domestic violence. See *Hayes*, 555 U.S. at 421; *United States v. Castleman*, 572 U.S. 157, ___, 134 S. Ct. 1405, 1418-20 (2014); *Voisine v. United States*, 579 U.S. ___, ___. 136 S. Ct. 2272, 2278-80 (2016).

¶ 23    The Gun Control Act, however, defines a "conviction" in such a way as to exclude from its purview a misdemeanor crime of domestic violence where, as a matter of state law, "the conviction has been expunged or set aside" or where the misdemeanor was "an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." 18 U.S.C. § 921(a)(33)(B)(ii) (2006).[2]

---

[2]The Gun Control Act also includes a "safety valve" that allows individuals to apply to the Attorney General for restoration of their firearm rights. 18 U.S.C. § 925 (2006). Under the statute, the prohibition may be removed on a case-by-case basis if the applicant sufficiently establishes "that the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest." *Id.* Since 1992, however, Congress has not appropriated the funds to

¶ 24        Johnson's conviction has not been expunged or set aside, and her pardon application was denied by the Governor. Accordingly, she may only obtain relief if her civil rights have been restored under section 921(a)(33)(B)(ii). *Id.*

¶ 25                                    *Civil Rights Restoration*

¶ 26        The "civil rights restored" provision uniformly has been described as "a measure by which the government relieves an offender of some or all of the consequences of his conviction" and "extend[s] to an offender a measure of forgiveness." *Logan v. United States*, 552 U.S. 23, 26, 32 (2007). The law of the convicting jurisdiction controls whether civil rights have been restored (*Caron v. United States*, 524 U.S. 308, 316 (1998)) because "Congress sought to accommodate a state's judgment that a particular person *** is, despite a prior conviction, sufficiently trustworthy to possess firearms" (*McGrath v. United States*, 60 F.3d 1005, 1009 (2d Cir. 1995)). See also *United States v. Estrella*, 104 F.3d 3, 6-7 (1st Cir. 1997) ("by reinvesting a person with core civic responsibilities, the state vouches for the trustworthiness of that person to possess firearms" unless that right is expressly withheld). Thus, the provision queries whether an offender's legal status has been altered by a state's dispensation of forgiveness. *Logan*, 552 U.S. at 26.

¶ 27        Illinois law provides a path to do exactly that—restore firearm rights under a specific restoration of rights provision. Sections 10(c)(1)-(3) of the FOID Card Act act as a mechanism to relieve an offender of some of the consequences of his conviction and extend a measure of forgiveness to certain qualified offenders. Specifically, the State has a process for determining, after an individualized hearing, that the individual is not likely to act in a manner dangerous to public safety and that it would not be against the public interest for the individual to possess firearms. 430 ILCS 65/10(c)(1)-(3) (West 2012). Thus, Illinois law indeed provides a status altering dispensation by restoring firearm rights.

¶ 28        Federal courts have not had occasion to recognize a state process like that of Illinois for restoration of firearm rights or to even consider whether firearm rights are "civil rights" as that term is applied under the federal statute. Historically, the relevant civil rights under section 921(a)(33)(B)(ii) have been the right to vote, the right to hold office, and the right to serve on a jury. *Logan*, 552 U.S. at 28.

¶ 29        Johnson never lost those civil rights as a result of her conviction. In Illinois, a misdemeanant does not lose the right to hold office or serve on a jury and only loses the right to vote if sentenced to a term of confinement. Ill. Const. 1970, art. III, § 2 ("A person convicted of a felony, or otherwise under sentence in a correctional institution or jail, shall lose the right to vote, which right shall be restored not later than upon completion of his sentence."); 730 ILCS 5/5-5-5(c) (West 2000) (right to vote is automatically restored upon release from imprisonment). As Johnson was not "under sentence" in a correctional institution or jail, she did not lose her right to vote. Settled law instructs that "the words 'civil rights restored,' do not cover the case of an offender who lost no civil rights." *Logan*, 552 U.S. at 37. Because Johnson cannot establish that she lost any of those identified civil rights, the Department maintains that she cannot avail herself of the restoration exception.

---

investigate or act upon the applications, rendering the provision "inoperative." *Logan v. United States*, 552 U.S. 23, 28 n.1 (citing *United States v. Bean*, 537 U.S. 71, 74-75 (2002)).

¶ 30    We disagree. A limited "three rights" view is not sustainable, given Illinois's mechanism for restoring civil rights and given the state of the law after *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010). We find that (1) the right to keep and bear arms is a "civil right," (2) Illinois has a regulatory mechanism to restore those rights through an individualized determination, and (3) relief granted under section 10 of the FOID Card Act constitutes a sufficient restoration of civil rights as intended by section 921(a)(33)(B)(ii).

¶ 31    When considering federal law, we generally look to the decisions of the United States Supreme Court and lower federal courts. *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶ 33. Decisions of the Supreme Court that definitively answer the question presented are binding on this court. *Id.* In the absence of Supreme Court precedent, the weight we give to lower federal court interpretations of federal law depends on factors such as uniformity of law and the soundness of the decisions. *Id.*

¶ 32    Although the federal courts addressing the "civil rights restored" provision have adhered to the core three-rights construction, nothing in the language of the statute suggests that those three core civil rights were meant to be an exhaustive list. Nor have federal courts specifically considered Illinois's regulatory scheme as a mechanism for restoring civil rights. And, significantly, none of the federal courts considered the question presented here post-*Heller*.

¶ 33    *Logan* is illustrative. In that case, the parties conceded the limited three-rights view. *Logan*, 552 U.S. at 28 ("While [18 U.S.C.] § 921(a)(20) does not define the term 'civil rights,' courts have held, and *petitioner agrees*, that the civil rights relevant under the *** provision are the rights to vote, hold office, and serve on a jury." (Emphasis added.)) The Court was not called upon to address Illinois's regulatory scheme, as it was not relevant to its decision. Further, the Court relied on pre-*Heller* and pre-*McDonald* cases.

¶ 34    Prior to *Heller* and *McDonald*, courts excluded restoration of firearms rights from the category of pertinent civil rights within the purview of the statute. See, *e.g.*, *United States v. Cassidy*, 899 F.2d 543, 549 & n.12 (6th Cir. 1990) (explaining that Congress used the term " 'civil rights,' " as opposed to " 'all rights and privileges,' " because "Congress intended to encompass those rights accorded to an individual by virtue of his citizenship in a particular state" and that "there is no individual right to possess a firearm").

¶ 35    That approach was based on the Supreme Court's 1939 decision in *United States v. Miller*, 307 U.S. 174 (1939), which was understood for seven decades to have endorsed the view that the second amendment protected a collective right. In 2008, the Supreme Court revisited the issue and held for the first time that the second amendment protects an individual right of law-abiding citizens to keep and bear arms for self-defense. *Heller*, 554 U.S. at 595. And in *McDonald*, the Court subsequently held that the right extends to the states through the fourteenth amendment. *McDonald*, 561 U.S. at 750.

¶ 36    To the extent that federal courts have since continued to adhere to the three-rights view, again, those cases have not considered Illinois's regulatory scheme and rely for their authority on pre-*Heller* decisions. See, *e.g.*, *United States v. Chovan*, 735 F.3d 1127, 1132 (9th Cir. 2013) (relying on a 2005 case); *United States v. Thompson*, 702 F.3d 604, 607 (11th Cir. 2012) (relying on a 2006 case); *Buchmeier v. United States*, 581 F.3d 561, 564 (7th Cir. 2009) (relying on a 1997 case); *Walker v. United States*, 800 F.3d 720, 723 (6th Cir. 2015) (where the parties conceded and the court relied on *Cassidy* and *Logan*). Accordingly, we find that,

under these circumstances, the relevant rights encompassed in the term "civil rights" as that term is applied to section 921(a)(33)(B)(ii) is not a settled question under federal law and that *Logan* does not bind our consideration of the issue.

¶ 37    We conclude that "civil rights" includes firearm rights as that term is applied under section 921(a)(33)(B)(ii). First, we consider the ordinary meaning of the term. See *Federal Communications Comm'n v. AT&T Inc.*, 562 U.S. 397, 403 (2011). Webster's Third New International Dictionary 413 (1993) defines the term "civil rights" as including "the rights secured to citizens of the U.S. by the *** 14th amendment[ ] to the constitution." As explained, *McDonald* resolved that the second amendment right recognized in *Heller* is a personal liberty guaranteed by the United States Constitution and the fourteenth amendment. *McDonald*, 561 U.S. at 791.

¶ 38    Notably, post-*Heller* and *McDonald*, the Supreme Court has included the right to bear arms as a "civil right" that may be lost because of a conviction and has equated it with the loss of the right to vote. *National Federation of Independent Business v. Sebelius*, 567 U.S. 519, 573 (2012) (noting that those who disobey a law passed under the commerce clause "may be subjected to criminal sanctions," which "can include not only fines and imprisonment, but all the attendant consequences of being branded a criminal: deprivation of otherwise protected civil rights, such as the right to bear arms or vote in elections"). Other state courts have also referred to firearms rights as a "civil right." See, *e.g.*, *DuPont v. Nashua Police Department*, 113 A.3d 239 (N.H. 2015) (specifically finding firearms rights to be civil rights under the federal Gun Control Act); *Ferguson v. Perry*, 740 S.E.2d 598, 604 (Ga. 2013) (noting cases in which courts have said "that the right to possess firearms is indeed a 'civil right' ").

¶ 39    Furthermore, the statutory language supports our conclusion. In applying the usual canons of construction, we are mindful that "[w]ords in a list are generally known by the company they keep." *Logan*, 552 U.S. at 31. The "civil rights restored" language appears "in the company of the words 'expunged,' 'set aside,' and 'pardoned.' " *Id.* at 32. As explained, these terms all describe "a measure by which the government relieves an offender of some or all of the consequences of his conviction" and are all events that "extend to an offender a measure of forgiveness." *Id.* at 26, 32. Thus, these terms are a recognition by Congress that an individual's status may change.

¶ 40    Consistent with these terms, restoration of firearm rights, as provided for under sections 10(c)(1)-(3) of the FOID Card Act (430 ILCS 65/10(c)(1)-(3) (West 2012)), similarly relieves an offender of some of the consequences of a conviction and extends a measure of forgiveness by finding, after an individualized hearing, that the offender no longer poses a risk to public safety.

¶ 41    Additionally, interpreting "civil rights restored" as including firearm rights aligns with the stated rationale and purpose of the statute. *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 26 (explaining that we may consider the reason for the federal law, the problems sought to be remedied, and the purposes to be achieved). A state regulatory scheme that restores a person's eligibility for firearm rights by affirmatively and expressly evaluating that person's future dangerousness—through evidence, and not generalization—is entirely consistent with the trustworthiness rationale that underpins the "civil rights restored" provision. Indeed, such a scheme is a direct and relevant path for a state to show that a person is rehabilitated and can be trusted to possess firearms. It reflects a determination by the

convicting jurisdiction that the particular consequence of the conviction should no longer be imposed.

¶ 42    By contrast, the State's determination that an individual is worthy of restoring the civic responsibility to vote only bears indirectly on an individual's fitness to possess a firearm—it is merely some evidence of forgiveness by the State. See *United States v. Valerio*, 441 F.3d 837, 842 (9th Cir. 2006) ("By contrast to the right to vote, no civil right could be more relevant to a felon's future dangerousness than the right to possess firearms.").

¶ 43    Thus, to ignore the express and measured finding under a section 10 hearing that an individual no longer poses a risk to public safety would frustrate the very legislative purpose underlying the federal statute. Consequently, for these reasons, we find that the plain language of the statute is broad enough to include firearm rights as a relevant civil right for purposes of section 921(a)(33)(B)(ii) and that this construction is entirely consistent with Congress's objective.

¶ 44    We recognize that some federal courts have insisted on a mechanical application, finding that "civil rights," *plural*, must be restored. See, *e.g.*, *Walker v. United States*, 800 F.3d 720, 727 (6th Cir. 2015) ("having just one civil right restored is not functionally equivalent to having multiple restored"). This literal interpretation does not take into consideration variations in state law. Congress recognized that different states have different laws and procedures for restoring civil rights to people and, depending on the conviction, an offender may lose all, none, or some of those rights through different mechanisms.

¶ 45    Rather than focusing on a minimum quantitative analysis, most federal courts have interpreted "civil rights restored" to mean that all civil rights that have been *lost* must be restored for the exception to apply. See, *e.g.*, *United States v. Thompson*, 702 F.3d 604, 608 (11th Cir. 2012) (holding that restoration of only one of three rights lost was insufficient); *United States v. Molina*, 484 Fed. App'x 276, 281 (10th Cir. 2012) (holding that restoration of only two of three rights lost was insufficient); *Buchmeier v. United States*, 581 F.3d 561, 564-65 (7th Cir. 2009) (holding that, where the civil rights lost were restored and where the right to serve on a jury was retained, the defendant's civil rights were sufficiently restored); *United States v. Brown*, 408 F.3d 1016, 1017 (8th Cir. 2005) (holding that restoration of only one of three rights lost was insufficient); *United States v. Leuschen*, 395 F.3d 155, 160 (3d Cir. 2005) (holding that restoration of only two out of three rights lost was insufficient); *United States v. Caron*, 77 F.3d 1, 6 (1st Cir. 1996) (holding that restoration of all of the rights which had been lost was sufficient).

¶ 46    *Logan* did not alter that construction. There, the Court merely explained that the civil rights restored language did not "cover the case of an offender who lost *no* civil rights." (Emphasis added.) *Logan*, 552 U.S. at 37. An offender who merely retained civil rights "and whose legal status, postconviction, remained in all respects unaltered by any state dispensation" did not come within the exemption. *Id.* at 26. That individual is said to have received "no status-altering dispensation, no token of forgiveness from the government." *Id.* at 32.

¶ 47    Here, Johnson meets the test—her lost rights were restored. Johnson was sentenced to a term of conditional discharge. As part of her sentence, she was statutorily required to "refrain from possessing a firearm or other dangerous weapon." 730 ILCS 5/5-6-3(a)(3) (West 2000). Additionally, as a collateral consequence of a misdemeanor conviction for domestic violence, she lost her eligibility for a FOID card and, thereby in turn, lost her right to acquire and possess

firearms in Illinois. Her rights were restored under Illinois's regulatory scheme (430 ILCS 65/10(c)(1)-(3) (West 2012)), which affirmatively provided for a "status-altering dispensation." *Logan*, 552 U.S. at 32.

¶ 48 We acknowledge that, post-*Heller*, one federal district court has declined to find that restoration of firearm rights was sufficient to trigger the exemption. See *Enos v. Holder*, 855 F. Supp. 2d 1088 (E.D. Cal. 2012), *aff'd*, 585 Fed. App'x 447 (9th Cir. 2014). To the extent that the court in *Enos* was considering a California law that automatically restored firearm rights by operation of law, as opposed to the affirmative restoration in Illinois, we find the case distinguishable on its facts. Furthermore, as we have explained, after carefully analyzing the plain language and rationale and purpose of the statute, we find the decision in *Enos* not well reasoned.

¶ 49 Notably, the New Hampshire Supreme Court was similarly critical of the district court's reasoning and declined to follow *Enos*. *DuPont*, 113 A.3d at 249-50. As in *DuPont*, we find Illinois's affirmative rehabilitative process under section 10 of the FOID Card Act sufficiently fulfills Congress's intent to "defer to a State's dispensation relieving an offender from disabling effects of a conviction." *Logan*, 552 U.S. at 37.

¶ 50 CONCLUSION

¶ 51 For the foregoing reasons, we hold that, under section 10 of the FOID Card Act, granting Johnson relief would not be contrary to federal law. 430 ILCS 65/10(c)(4) (West 2012). Accordingly, we affirm the judgment of the circuit court directing the issuance of a FOID card to Johnson. Based on our holding, there is no need to address the constitutional basis for the trial court's ruling. Accordingly, we vacate the circuit court's holding that section 922(g)(9) and the provisions of the FOID Card Act (*id.* §§ 8(n), 10(b), 10(c)(4)), along with the relevant provisions of the Illinois Administrative Code, are unconstitutional as applied to Johnson.

¶ 52 Affirmed in part and vacated in part.