NOTICE
Decision filed 12/12/24. The
text of this decision may be
changed or corrected prior to
the filing of a Petition for
Rehearing or the disposition of
the same.

2024 IL App (5th) 230235-U

NO. 5-23-0235

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| ROBERT E. DAILEY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Marion County. |
| | ) | |
| v. | ) | No. 22-MR-19 |
| | ) | |
| MARION COUNTY STATE'S ATTORNEY, | ) | Honorable |
| | ) | Jeffrey A. DeLong, |
| Respondent-Appellee. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Cates and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court did not abuse its discretion in denying the petitioner's petition for relief from denial of a Firearm Owners Identification (FOID)   card.

¶ 2    In July 2022, the petitioner, Robert Dailey, filed a petition for relief from denial of a Firearm Owners Identification (FOID) card by the Illinois State Police (ISP). Thereafter, on August 4, 2022, he filed an amended petition seeking this same relief. In December 2022, the respondent, the Marion County State's Attorney, filed an objection to the amended petition. After a hearing on the petition, the circuit court denied the petitioner's petition on the ground that the

1

petitioner failed to prove that he was not likely to act in a manner dangerous to the public safety. For the reasons that follow, we affirm.[1]

¶ 3                                         I. BACKGROUND

¶ 4     On July 25, 2022, the petitioner filed a petition for relief from denial of a FOID card by the ISP. On August 4, 2022, he filed an amended petition, and the amended petition indicated that he was convicted of misdemeanor domestic battery in October 1997; that he successfully completed the terms of his sentence; and that in December 2016 and November 2021, he applied for a FOID card but was denied based on his 1997 conviction. He argued that substantial justice was not done by denying his FOID card application as he had not been convicted of a felony; the underlying facts of the domestic battery conviction did not involve a firearm; the circumstances surrounding his conviction were unlikely to reoccur; and he had a reputation in the community for being honest, hardworking, law-abiding, and nonviolent. He noted that he wanted a FOID card so that he could legally acquire and possess a firearm for hunting, self-protection, and other legal purposes. He argued that granting him a FOID card would not be contrary to the public interest.

¶ 5     Attached to the amended petition were multiple affidavits from the petitioner's friends. These affidavits stated that substantial justice was not done by denying the petitioner a FOID card; that he had a reputation in the community for being honest, hardworking, law-abiding, and nonviolent; that he wanted a FOID so that he could legally acquire a firearm for recreational purposes and self-defense; and that granting him a FOID card would not be contrary to the public interest.

---

[1]The respondent, the Marion County State's Attorney, did not file an appellee brief in this case. However, on August 7, 2023, this court granted the Illinois State Police's (ISP) request to intervene. Thereafter, on November 14, 2023, the ISP filed a responsive brief.

2

¶ 6    On December 21, 2022, the respondent filed an objection to the amended petition, arguing that the petitioner had failed to establish that his criminal history and his reputation were such that that he would be unlikely to act in a manner that was dangerous to public safety and had failed to prove that granting him relief would not be contrary to the public interest. The respondent contended that the affidavits attached to the amended petition failed to provide any evidence in support of the general and conclusory statements contained in them, failed to address the responsibilities inherent in firearm ownership, and failed to provide any fact-specific reasons why the affiants believed that the petitioner would be able to satisfy the significant responsibility of being granted a FOID card and safely possessing a potentially deadly weapon.

¶ 7    The respondent also contended that, although the affiants indicated that they were friends with the petitioner for a period of years, none of them provided specific information about their interactions with the petitioner and how often these interactions occurred or any details for the trial court to evaluate the depth of their relationships with the petitioner. The respondent argued that the petitioner's criminal history demonstrated a contempt for the law as, not only was he convicted of domestic battery in 1997, but he had also been convicted of harassment by telephone (Fayette County Case No. 00-CM-357) and resisting a police officer (Fayette County Case No. 01-CF-3).

¶ 8    At a March 7, 2023, bench trial, the following testimony was presented. Gaylin Rankin testified that the petitioner was his daughter's friend about 20 or 25 years ago. Rankin had maintained contact with the petitioner "off and on" since then; he estimated that he currently saw the petitioner every two or three months and saw the petitioner once or twice a month in the past. During that time, he had never seen the petitioner in a violent interaction or argument, had never seen him with a dangerous weapon, and had never heard anything that would make him think that the petitioner was a danger. He did not believe there was any danger in allowing the petitioner to

3

possess a weapon. He was not aware that the petitioner had a domestic battery conviction before he became involved in this proceeding, but he was told before he signed his affidavit. On cross-examination, he admitted that he only saw the petitioner for about six hours per year and that they were acquaintances through his daughter. He acknowledged that he had never seen the petitioner with a firearm, so he did not know if the petitioner could safely handle one.

¶ 9    Steven Whritenour, a lieutenant with the Centralia Police Department, testified that he knew the respondent through his employment but did not socialize with him. He estimated that, over approximately 10 or 12 years, he had about 12 interactions with the petitioner that were fairly short. The police department had 24 contacts with the petitioner over a 20-year period, but none of these contacts involved the petitioner being violent. The petitioner was either a witness or complainant in those interactions. Lieutenant Whritenour was not aware of any reason why the petitioner should not have a firearm. However, he had never seen the petitioner carry a firearm, so he did not know whether the petitioner could safely handle one. Lieutenant Whritenour was also not aware of any contacts that the petitioner may have had with police departments in other counties or of any other convictions.

¶ 10    Megann Lyberger testified that she had been friends with the petitioner for about six years. She initially interacted with him and other friends in a group approximately every other weekend, but their interactions had become more frequent. In their group of friends, the petitioner had a reputation for being honest and law-abiding. He was described as sarcastic but a "good guy." She never felt threatened by the petitioner or observed any behavior where he was violent or threatened other people. She had never seen him handle a deadly weapon or become violent with another individual. She described an incident about two or three years ago between her brother-in-law and a neighbor that had escalated, and the petitioner intervened to calm her brother-in-law down, so it

4

would not become violent. She did not believe that the petitioner would be a danger to others if he was permitted to have a FOID card. She had never seen the petitioner with a firearm, but she had enough interactions with him to not be concerned if he had one.

¶ 11    Shane Lyberger testified that he first met the petitioner when he was around 15 years old in 1998 or 1999, and when the petitioner was around 19 or 20 years old. Initially, they interacted about a few times per month in a group setting. However, in the last three years, he had seen the petitioner three to four days per week, and for the last six or seven years, they talked about every day or every other day. He did not recall ever observing any violent behavior from the petitioner, and he had never seen the petitioner threaten physical violence. He did not believe that there would be any danger in allowing the petitioner a FOID card. However, he acknowledged that he had never seen the petitioner handle a firearm, so he would not know how the petitioner would handle one. He also acknowledged that, when the defendant was arrested for telephone harassment in Fayette County, he was with him and was also arrested.

¶ 12    The petitioner testified about the circumstances surrounding his domestic battery conviction. He explained that he got into a disagreement with his then-wife, and when he tried to leave the room so it would not escalate, she jumped on his back to prevent him from leaving. At some point during the altercation, she bit him, and he hit her in the face. He was ultimately sentenced to a term of probation after pleading guilty. As part of his probation, he was required to attend counseling and a domestic violence course, which he completed.

¶ 13    Regarding the telephone harassment incident, the petitioner explained that he was with Lyberger when Lyberger was talking to a young woman on the petitioner's phone. An argument ensued between the woman and Lyberger, and she told them not to call her anymore. However, "[a]t least one more call" was made, and she called the police. The petitioner was subsequently

5

arrested and convicted of telephone harassment. He was also charged with the felony offense of obstructing justice because he initially denied having any knowledge of the incident. He ultimately pled guilty to a misdemeanor charge of resisting or obstructing a peace officer. He was approximately 21 years old when this incident occurred.

¶ 14 The petitioner testified that he was 10 years old when he began deer hunting, and he continued to regularly hunt until he was around 18 years old. He took a hunter safety course before he started hunting. He explained that he wanted a FOID card so that he could hunt and participate in recreational shooting as well as defend himself if necessary. He had no intention of using the firearm to injure another person other than in appropriate self-defense.

¶ 15 After the close of the petitioner's case, the trial court expressed concern about an incident that was not brought up in the testimony. The court recounted that the petitioner had been in court in January 2023 on an order of protection and that the petitioner had agreed to an extension of that order of protection. The petitioner's counsel then reopened his case and had the petitioner testify about the incident. The petitioner explained that, at the time the orders of protection were entered, he was in the middle of a divorce. The first emergency order of protection was entered against him in October 2022. However, he noted that, once they went to court, it was dismissed. His ex-wife also sought another order of protection in December 2022 that was extended on an "emergency basis," but it was dismissed at the next court date. He did not know why it was dismissed. He testified that he did not act aggressively or violently toward his wife.

¶ 16 Following the hearing, on March 9, 2023, the trial court entered an order denying the petitioner's petition. In denying the petition, the court noted that it had considered the evidence as well as assessed the credibility of the witnesses. The court indicated that Rankin had minimal contact with the petitioner at the time he testified; that Lieutenant Whritenour was a Centralia

6

police officer, but the petitioner resided in Salem; and the other two witnesses were in the petitioner's friend group, one of which was involved in the telephone harassment case with the petitioner. The court also noted the petitioner's recent involvement with an order of protection within the last two months, and although it was entered *ex parte*, it had been temporarily extended by agreement for a short period. Based on the testimony and the credibility of the witnesses, the court found that the petitioner failed to meet his burden to show that he would not be likely to act in a manner that was dangerous to the public safety. The petitioner appeals.

¶ 17                                    II. ANALYSIS

¶ 18     Under the FOID Card Act, the ISP may deny an application for a FOID card if the applicant has been convicted of misdemeanor domestic battery or is a person prohibited from acquiring or possessing firearms or firearm ammunition by state statute or federal law. 430 ILCS 65/8(*l*), (n) (West 2022). Section 10 of the FOID Card Act provides a mechanism by which a petitioner can appeal the denial of his application for a FOID card to the circuit court. If the circuit court determines that a petitioner has established that substantial justice has not been done following the denial of a FOID card application, the court should order the ISP to issue a FOID card unless petitioner is otherwise prohibited from obtaining, possessing, or using a firearm under federal law. *Id.* § 10(b), (c).

¶ 19     A circuit court may grant a FOID card applicant relief where he establishes, to the court's satisfaction, the following: (1) the applicant has not been convicted of a forcible felony under Illinois law or any law of any other jurisdiction within 20 years of the applicant's FOID card application, or at least 20 years have passed since the end of any period of imprisonment imposed relating to that conviction; (2) the circumstances regarding a criminal conviction, the applicant's criminal history, and his reputation are such that the applicant will not be likely to act in a manner

7

dangerous to public safety; (3) granting relief would not be contrary to the public interest; and (4) granting relief would not be contrary to federal law. *Id.* § 10(c). The first three requirements for restoration of the right to possess a firearm serve to ensure that a person is rehabilitated and can be trusted to possess firearms. *Johnson v. Department of State Police*, 2020 IL 124213, ¶ 41. If an individual can satisfy the first three requirements, he may be granted relief that is not contrary to federal law as long as there is no other applicable federal law prohibiting firearm possession. *Evans v. Cook County State's Attorney*, 2021 IL 125513, ¶ 51.

¶ 20    Because the statute affords the circuit court discretion in determining whether a petitioner has met his burden of establishing the section 10(c) factors, the proper standard of review is abuse of discretion. *Id.* ¶ 41. An abuse of discretion occurs when a ruling is arbitrary, fanciful, or one that no reasonable person would make. *Id.*

¶ 21    Although we recognize that it is certainly possible for a reasonable person to disagree with the trial court's conclusion here, we do not find that the trial court's ruling was arbitrary, fanciful, or one that no reasonable person would make. The trial court's analysis focused on whether the petitioner satisfied the second requirement, *i.e.*, the circumstances regarding a criminal conviction, the applicant's criminal history, and his reputation are such that the applicant will not be likely to act in a manner dangerous to public safety. The court's denial of the petitioner's petition seeking relief was based on its evaluation of the evidence and its assessment of the credibility of the witnesses. The trial court, who is in the best position to determine the credibility of the witnesses, found that the testimony from the petitioner's witnesses was not sufficient to satisfy the section 10(c) requirements. Specifically, the court found that Rankin had minimal contact with the petitioner, which was supported by the record as Rankin admitted that he only saw the petitioner for about six hours per year and that they were acquaintances. The court noted that Lieutenant

8

Whritenour was a police officer in Centralia, a town that the petitioner did not reside in. Further, we note that Lieutenant Whritenour admitted that he did not socialize with the petitioner, their interactions had been fairly short, and he was not aware of any contacts that the petitioner may have had with other county police departments. The court further found that the other two witnesses were in the petitioner's friend group, one of which was involved in the situation that ultimately led to the petitioner's telephone harassment conviction.

¶ 22    Moreover, two orders of protection had been granted against the petitioner within two months before the hearing, and even though it was entered *ex parte*, one was temporarily extended by agreement. Although these orders of protection were ultimately dismissed, they are still evidence of the petitioner's recent interactions with the judicial system, and his potential to undermine public safety.

¶ 23    The petitioner argues that the trial court abused its discretion by discounting the uncontradicted testimony from his witnesses. However, the trial court is in the best position to observe the witnesses while testifying, to determine their credibility, and to weigh the evidence. *Fox v. Heimann*, 375 Ill. App. 3d 35, 46 (2007). Therefore, we will not substitute our judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses. *People v. Gray*, 2017 IL 120958, ¶ 35. Accordingly, we affirm the trial court's denial of the petitioner's petition seeking relief from the denial of his FOID card application by the ISP.

¶ 24                                      III. CONCLUSION

¶ 25    For the foregoing reasons, we affirm the judgment of the circuit court of Marion County.


¶ 26    Affirmed.