(No. 54180.–

JUNIOR C. OSTENDORF *et al.*, Appellees, v. INTER-NATIONAL HARVESTER COMPANY *et al.* (International Harvester Company, Appellant).

*Opinion filed February 19, 1982.—Modified on denial of rehearing March 25, 1982.*

274

Thomas, Mamer & Haughey, of Champaign, and Lord,
Bissell & Brook, of Chicago (William J. Brinkman, Richard

E. Meuller, and Hugh C. Griffin, of counsel), for appellant.

Cook, Shevlin & Keefe, Ltd., of East St. Louis (Bruce N. Cook and Thomas Q. Keefe, Jr., of counsel), for appellees.

JUSTICE CLARK delivered the opinion of the court:

Junior C. Ostendorf was injured by fire on October 26, 1973, while operating an International Harvester model 806 tractor. The fire began when the fuel tank filler cap allegedly "blew off" under pressure, causing gasoline to gush out of the tank and ignite. Junior and his wife, Betty Ostendorf, filed suit against International Harvester and Joseph Brewer, owner of the tractor, on May 2, 1974, in the circuit court of Champaign County. Counts II and III of the multicount complaint were based upon strict products liability. They alleged that the design and manufacture of the gas tank and gas cap on the tractor rendered it unreasonably dangerous when put to its intended use. The jury returned a verdict in favor of both defendants. Judgment was entered on the verdict on December 17, 1975, and was affirmed on appeal. *Ostendorf v. Brewer* (1977), 51 Ill. App. 3d 1009, *appeal denied* (1978), 67 Ill. 2d 593.

On May 25, 1979, the Ostendorfs filed a petition under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 72) seeking to set aside the 1975 judgment in favor of International Harvester. The petition alleged that International Harvester had fraudulently concealed evidence during the earlier litigation which, if disclosed, would have enabled them to prove the existence of a design defect and prevented the court from entering judgment for International Harvester. Petitioners attached an affidavit and documents in support of their allegations that International Harvester had given false answers to interrogatories in the earlier action. Defendant Brewer was not involved in the section 72 proceeding.

International Harvester entered a special appearance

and moved to dismiss the petition. As grounds for its motion, International Harvester asserted that the facts alleged in the petition, even if proved, would not constitute fraudulent concealment. It further asserted that the petition was untimely, since it had been filed more than two years after entry of the judgment sought to be vacated. Under section 72(3), the petition must be filed not later than two years after the entry of judgment, unless the running of the limitations period is tolled by the legal disability of the petitioner, by duress, or by fraudulent concealment of the ground for relief. (Ill. Rev. Stat. 1979, ch. 110, par. 72(3).) International Harvester contended that the limitations period had run on the Ostendorfs' petition, and that since the allegations of the petition did not amount to fraudulent concealment, the statute had not been tolled.

The circuit court, after hearing the arguments of counsel, took the matter under advisement. On December 11, 1979, it granted International Harvester's motion to dismiss, finding that the petition's allegations of fraudulent concealment were "not sufficiently substantiated," and that the petition was therefore not timely. The appellate court reversed and remanded the cause for an evidentiary hearing on the issue of fraudulent concealment, as well as the other issues raised by the petition. It expressed no opinion on the merits. (88 Ill. App. 3d 316, 319.) We granted leave to appeal. 73 Ill. 2d R. 315.

We first consider whether the circuit court properly dismissed the Ostendorfs' petition. Although a section 72 petition is filed in the same action in which the judgment it seeks to vacate was entered, it is not a continuation thereof. (Ill. Rev. Stat. 1979, ch. 110, par. 72(2).) The petition is in fact a new action and is subject to the usual rules of civil practice. (*Brockmeyer v. Duncan* (1960), 18 Ill. 2d 502, 505; Davis, *The Scope of Section 72 of the Civil Practice Act*, 55 Ill. B.J. 820 (1967).) Where it fails to state a cause of action or shows on its face that the petitioner is not entitled to

relief, a section 72 petition is subject to a motion to dismiss. (*Brockmeyer v. Duncan* (1960), 18 Ill. 2d 502, 505.) On a motion to dismiss, therefore, a section 72 petition is to be considered in the same manner as a civil complaint. *Elfman v. Evanston Bus Co.* (1963), 27 Ill. 2d 609, 610; *Glenn v. People* (1956), 9 Ill. 2d 335, 340-41.

A motion to dismiss admits all well-pleaded facts. Its purpose is to raise an issue of law as to the legal sufficiency of the allegations of the complaint. (*Brokaw Hospital v. Circuit Court* (1972), 52 Ill. 2d 182, 185.) We have repeatedly held that a motion to dismiss should not be granted unless it clearly appears that no set of facts could ever be proved that would entitle the plaintiff to recover. *Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, 187, and cases there cited.

In granting International Harvester's motion to dismiss, the circuit court concluded that, even taking the allegations of the Ostendorfs' petition as true, International Harvester's conduct as there described did not in law amount to fraudulent concealment. International Harvester has taken the same position in this court, arguing vigorously that the facts alleged in the petition, even if proved, would not establish fraudulent concealment. We disagree.

Petitioners alleged that International Harvester gave false ·answers to interrogatories and withheld test reports and other information demanded by the interrogatories. Specifically, it is alleged that petitioners' interrogatory No. 17 asked for information concerning any tests conducted by International Harvester on the fuel system of the model 806 tractor. International Harvester responded, "Detailed records concerning specific tests are no longer available." In other interrogatories, the Ostendorfs asked whether any officer or employee of International Harvester ever stated an opinion to any supervising or managerial employee recommending against the use of the gas tank incorporated in the 806 tractor, or in any other tractors utilizing the same

or a similar system, and whether International Harvester had ever received any recommendations from any person or company against using the gasoline tank and electrical harness incorporated in the 806 tractor or in any prior or subsequent model years that used the same or similar systems because of the hazards they may have posed to the operator. In both cases International Harvester's response was "Not to our knowledge."

With their petition the Ostendorfs submitted documents obtained from International Harvester by petitioners' current counsel, Bruce N. Cook. According to his affidavit, the documents were obtained during his representation of a different party in another matter (Gauges v. International Harvester Co., Civil No. 76L2050, Circuit Court of St. Clair County), apparently involving an incident similar to the one in this case. Among them is an eight-page report, dated August 21, 1964, of fuel loss by vaporization through the fuel cap vent and fuel tank pressures in the 806 tractor, conducted by International Harvester's research engineers. It states in part, "Maximum fuel tank pressures ranged from 4.3 to 4.9 psi, constituting a definite safety hazard." Another report, dated May 26, 1965, concerns recommendations of design changes for a prototype tractor which was to have a design similar to the 806, to avoid "all the fuel tank heating and vaporization problems that have arisen on other IH tractors with similar design." The report refers to tests on various tractors, including the 806. It states in part: "Tests on an 806 gasoline tractor indicate that as much as 5% fuel can be lost due to vaporization during field operation. *** Vaporization of the fuel raises the fuel tank pressure which constitutes a safety hazard. *** The Test Group strongly recommends that the fuel tank be relocated to eliminate the safety hazard."

Taking, as we must, the petition's allegations as true, we must assume that International Harvester had knowledge of the existence of the reports yet failed to produce them when

requested. The existence of these reports, which are clearly material embraced by the interrogatories, demonstrates International Harvester's failure to comply with the requirements of full and frank disclosure imposed by our discovery rules. In light of these documents, International Harvester's responses were, if not outright falsehoods, half-truths of the type condemned in *Buehler v. Whalen* (1977), 70 Ill. 2d 51, 64-68. In the context of discovery, which is supposed to be conducted in good faith and a spirit of cooperation for the purpose of ascertaining the truth, such half-truths are equivalent to outright lies. They have the effect of affirmative concealment, since they imply that there is no information or evidence to be sought. They inevitably tend to mislead opposing counsel into the belief that further inquiry is not needed.

We have very recently reiterated our views of the purpose of discovery and the conduct expected of parties in the discovery process. Discovery is intended to be a mechanism for the ascertainment of truth, for the purpose of promoting either a fair settlement or a fair trial. It is not a tactical game to be used to obstruct or harass the opposing litigant. (*Williams v. A. E. Staley Manufacturing Co.* (1981), 83 Ill. 2d 559, 564-66, and cases there cited.) "Fractional disclosure" in discovery is not the disclosure contemplated by our discovery rules. (*Buehler v. Whalen* (1977), 70 Ill. 2d 51, 67-68.) We hold that, as a matter of law, failure to comply with the obligation of full and truthful disclosure imposed on litigants by our discovery rules constitutes fraudulent concealment for purposes of tolling a statute of limitations.

Since it did not clearly appear that petitioners could never have proved any set of facts that would entitle them to relief, the motion to dismiss should not have been granted. We therefore reverse the circuit court's order dismissing the Ostendorfs' petition.

This case is somewhat unusual in that the questions

whether the statute of limitations was tolled and whether petitioners have a valid claim under section 72 overlap, since fraudulent concealment is an issue in both. The petition alleged that if the evidence concealed by International Harvester had been introduced at trial, it would have prevented the entry of judgment against the Ostendorfs. The motion to dismiss did not address this issue, nor was it considered by the circuit court. The appellate court, though it did not address the merits of the petition, briefly stated its views on the procedures to be followed after remand and what petitioners would have to prove to show themselves entitled to relief. As an aid to determination of the case on remand, we add our observations on these points.

In general, to be entitled to relief from judgment, the petitioner must prove (1) that if the ground for relief had been known at trial it would have prevented the entry of judgment against him, and (2) that failure to discover and present the ground for relief was not the result of his own lack of diligence. (*Brockmeyer v. Duncan* (1960), 18 Ill. 2d 502, 504-05; *People v. Touhy* (1947), 397 Ill. 19, 24-26; Davis, *The Scope of Section 72 of the Civil Practice Act*, 55 Ill. B.J. 820 (1967).) International Harvester has argued vehemently in this court that newly discovered evidence can never be a ground for setting aside a judgment under section 72. It is true that language to this effect can be found in many of our cases. (*People v. Colletti* (1971), 48 Ill. 2d 135, 137; *Schuman v. Department of Revenue* (1967), 38 Ill. 2d 571, 574; *People v. Touhy* (1947), 397 Ill. 19, 25.) However, closer examination reveals that in these cases and indeed in all the cases we have found in which newly discovered evidence was held not to be a sufficient ground for relief under section 72, it was for one of two reasons: either the losing litigant, through the exercise of ordinary diligence, could have discovered and produced the evidence at trial; or the evidence was not of so material and controlling a nature that it probably would have changed the outcome of the

trial. (*People v. Berland* (1978), 74 Ill. 2d 286, 316; *Crane Co. v. Parker* (1922), 304 Ill. 331, 337; *County Board of School Trustees ex rel. Hinsdale Township High School District No. 86 v. Association of Franciscan Fathers* (1977), 49 Ill. App. 3d 686, 696; *cf. Pritchett v. Steinker Trucking Co.* (1968), 40 Ill. 2d 510 (motion for new trial on basis of newly discovered evidence).) The cases do not say that newly discovered evidence cannot be the basis for relief under section 72, but only that certain conditions must be satisfied before relief will be granted. As stated in *Crane Co. v. Parker:*

> "If, however, a party has made every effort in his power to discover evidence and failed, when afterwards discovered courts of equity *** will, when satisfied that such newly discovered evidence would have produced a different result if it had been known in proper time and that the judgment is unjust, grant a new trial." 304 Ill. 331, 337.

International Harvester also urges that newly discovered evidence that is "merely cumulative" of evidence already presented at trial is not sufficient grounds for setting aside a judgment. (*Crane Co. v. Parker* (1922), 304 Ill. 331, 337.) To say that new evidence is "cumulative" of evidence previously presented is simply to state the conclusion that, had the new evidence been introduced at trial, it would not have changed the result, because it added nothing to what was already before the jury. Especially in a products case it seems difficult to conclude that additional reports of tests and opinions of experts would not change the result. One expert opinion that a particular design feature constitutes a safety hazard is simply one opinion. But several similar opinions may add up to a design defect, especially when the experts are the manufacturer's employees.

As regards petitioners' diligence in discovering the ground for relief, we think a litigant exercises ordinary diligence in pretrial discovery when he poses interrogatories

reasonably calculated to elicit the information important to his case. If his opponent then suppresses information within the scope of the interrogatories in such a way as to prevent the inquirer from realizing what has occurred, the failure to discover the information is the result of the former's fault, not of the latter's negligence. International Harvester points to *County Board of School Trustees ex rel. Hinsdale Township High School District No. 86 v. Association of Franciscan Fathers* (1977), 49 Ill. App. 3d 686, in which the school board gave a false answer to an interrogatory that asked about the existence and contents of a report by a former board member. The appellate court found there was no fraudulent concealment—but this was because the report in question was a public document which the petitioner could have obtained at any time. The distinction from the present case is obvious.

One of the guiding principles in the administration of section 72 relief is that the petition invokes the equitable powers of the court, which should prevent enforcement of a judgment when it would be unfair, unjust, or unconscionable. (*Elfman v. Evanston Bus Co.* (1963), 27 Ill. 2d 609, 613; *Ellman v. De Ruiter* (1952), 412 Ill. 285, 292.) We note that in both these cases the unfair conduct of counsel was a factor in the court's determination that section 72 relief was warranted. As the court stated in *Elfman*, " 'Something more than the morals of a medieval market may reasonably be expected in the conduct of litigation.' " 27 Ill. 2d 609, 615, quoting *Jansma Transport, Inc. v. Torino Baking Co.* (1960), 27 Ill. App. 2d 347, 354.

The appellate court remanded this case with instructions to the circuit court to hold an evidentiary hearing involving the testimony of witnesses and the opportunity to cross-examine. This court has not previously discussed whether or when a trial judge is required to conduct an evidentiary hearing before granting or denying a section 72 petition. The appellate court has developed the rule that

where the affidavits supporting and opposing a petition do not controvert one another, judgment may, in light of the language of section 72(2), be entered on the basis of the affidavits. (*Isaacs v. Shoreland Hotel* (1963), 40 Ill. App. 2d 108.) Where, however, the central facts of a section 72 petition are controverted, an evidentiary hearing must be held. *Mercantile All-In-One Loans, Inc. v. Menna* (1978), 63 Ill. App. 3d 931; *McKinnon v. Yellow Cab Co.* (1975), 31 Ill. App. 3d 316; *Wilson v. Wilson* (1965), 56 Ill. App. 2d 187.

We believe that this rule is sound. In a section 72 proceeding, as in a proceeding on a summary judgment motion, factual disputes may arise that cannot be resolved solely on the basis of pleadings, affidavits, and the record of the prior proceeding. Where there is a genuine dispute as to an issue of fact, that issue must be determined by the trier of fact. (*Ray v. City of Chicago* (1960), 19 Ill. 2d 593.) We do not in this case decide whether a full-blown trial-type hearing is always required when litigants present contradictory affidavits. Section 72 petitions are directed to the discretion of the trial judge, who must in the first instance decide whether a factual dispute is present.

In this case, however, we believe it was inappropriate for the appellate court to order the circuit court to conduct an evidentiary hearing. International Harvester has not yet answered the section 72 petition on the merits, or alleged any facts controverting petitioners' contentions that it deliberately withheld material of which its employees had knowledge and which was within the scope of the interrogatories, and that the material would probably have prevented the entry of judgment against the Ostendorfs. Its motion to dismiss raised a legal issue rather than a factual one. Once International Harvester has answered, the circuit court will be in a position to determine whether a factual dispute exists as to these central issues and, if so, to hold an evidentiary hearing if the issues cannot be resolved on the basis of the pleadings, affidavits, and supporting materials

submitted. Accordingly, we vacate the judgments of the appellate and circuit courts and remand the cause to the circuit court for further proceedings consistent with this opinion.

*Judgments vacated;*
*cause remanded.*