BYRLE H. SMITH *et al.*, Plaintiffs-Appellants, v. NATIONAL CARRIERS, INC., *et al.*, Defendants-Appellees.

Fifth District   No. 5—87—0631

Opinion filed August 23, 1989.

Edward J. Kionka, of Murphysboro, for appellants.

Gregory C. Ray, of Craig & Craig, of Mattoon, for appellees.

JUSTICE RARICK delivered the opinion of the court:

Byrle and Lorraine Smith brought this action in the circuit court of Fayette County against George Gittinger and National Carriers, Inc., seeking damages for injuries sustained when their car was struck by a National Carriers truck being driven by Gittinger. The complaint alleged both negligence and willful and wanton misconduct. The case was tried before a jury which returned verdicts for the defendants on all counts. No post-trial motion was filed and no appeal was taken from the judgment. Approximately two years later, the Smiths filed a *pro se* section 2—1401 (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401) petition for post-judgment relief alleging that they had located a critical eyewitness who they had been unable to locate at the time of trial. Attached to the petition was an affidavit of the witness' proposed testimony, which substantially supported the Smiths' version of the accident. The trial court struck the petition, finding that the witness' testimony went to the issue of liability only and that the jury could have found against the Smiths on the basis of liability or damages. It is from this decision that the Smiths appeal.

The record reveals that on January 25, 1979, the Smiths were traveling east on I-70. The weather was clear but the roads were covered with ice and snow. Upon cresting a hill, the Smiths observed a jackknifed tractor-trailer ahead of them blocking the right-hand eastbound lane. Byrle Smith testified that he moved into the left-hand lane to go around the trailer and was moving at 10 to 20 miles per hour.

Gittinger was also traveling east on I-70. He was driving in the left lane because it had less snow and ice. Upon reaching the crest of the hill, Gittinger saw the jackknifed truck ahead and the Smith car. Gittinger and his co-driver, William Barnett, testified that Smith was still in the right-hand lane while Smith testified that he switched lanes before Gittinger crested the hill. Gittinger and Barnett noticed that Smith was tapping his brakes. Gittinger began tapping his brakes, but his truck began to jackknife on the icy road and Gittinger ceased braking.

Gittinger and the Smith vehicle converged at a point just west of the jackknifed tractor-trailer. Gittinger was moving faster than Smith, who pulled off the road onto the left shoulder. Smith had traveled several hundred feet when the side of Gittinger's truck struck the side of his car, forcing him off onto the median.

The testimony of the Smiths differs from that of Gittinger and Barnett on numerous points. The Smiths testified that the distance from the crest of the hill to the location of the jackknifed trailer was approximately two-thirds of a mile. This was confirmed by a registered land surveyor. Gittinger and Barnett initially stated that the distance was about 200 yards, but Gittinger later changed his testimony and stated that it was closer to one-half mile. Smith also stated that he moved into the left lane when he was halfway between the hill top and the jackknifed tractor-trailer, while Gittinger testified that Smith was only 50 to 100 feet from the jackknifed truck when he switched lanes and that he was so close to Smith at that point that he thought the Smith vehicle would hit his front bumper. Gittinger maintained that he thought Smith was going to stop in the right lane. The parties also disagreed on Gittinger's speed and on whether Smith used his turn signals.

The Smiths had initially filed a *pro se* complaint on January 23, 1981. They subsequently retained counsel who filed an amended complaint alleging negligence and willful and wanton misconduct against both defendants. The case went to trial at which the Smiths, Gittinger and Barnett all testified. The driver of the jackknifed truck, Acie Eggerson, identified by defendants in discovery as "A. Eggers," had also been an eyewitness, but the Smiths had been unable to locate him before trial. On January 18, 1975, the jury returned verdicts in favor of the defendants on all counts. Immediately after trial, the Smiths' attorney sought leave to withdraw, and withdrawal was allowed on June 21, 1985, over the Smiths' objections, and the Smiths were given 30 days to obtain new counsel. On July 19, 1985, the Smiths filed a petition seeking additional time to obtain counsel

which was denied on August 15, 1985. No post-trial motion was filed and no appeal was taken from the judgment.

Following trial, the Smiths appear to have undertaken extraordinary efforts to locate Acie Eggerson and, proceeding *pro se*, filed on January 16, 1987, a "Motion for Leave to File a Petition for Relief from Judgment," alleging that Eggerson had been found. The Smiths subsequently filed an "Affidavit-Petition" requesting relief, and the affidavit of Acie Eggerson, which he had signed and sworn to on November 25, 1986. In his affidavit, Eggerson stated, among other things, that immediately after the accident, Gittinger provided him with an accident form which he filled out, indicating his full name, address, and other information. The defendants filed a motion to strike the "Affidavit-Petition," alleging that it was conclusory and argumentative, contained statements of fact of which Eggerson could not possibly have known, and had clearly been written by Byrle Smith. The defendants also filed a motion to strike and dismiss the Smiths' motion for leave to file, arguing that such motion should be construed as a section 2—1401 petition and that as such it failed to make out a *prima facie* case for relief. Specifically, defendants argued that the Smiths failed to set forth any facts demonstrating due diligence, failed to show how the new evidence was so decisive that it could have prevented judgment against them, and failed to address the issue of whether the jury's verdict could have been based solely on the question of damages. The trial court took the motions under advisement. The court subsequently struck the Smiths' petition, finding that while the Smiths had clearly demonstrated due diligence, they could not possibly show that the testimony of Eggerson could have prevented judgment against them. The trial court stated that the jury's verdict could have been based on the issues of liability and/ or damages, and that whether Eggerson's testimony could have changed the jury's outcome was mere speculation.

■ On appeal, the Smiths argue that the trial court erred in refusing to grant them a new trial pursuant to their section 2—1401 petition. To prevail on a section 2—1401 petition, the petitioner must show (1) that the ground for relief would have prevented judgment against him had it been known at trial, and (2) that the failure to discover or present such ground was not the result of the petitioner's own lack of diligence. (*Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 273, 283, 433 N.E.2d 253, 257; *Lubbers v. Norfolk & Western Ry. Co.* (1984), 105 Ill. 2d 201, 210, 473 N.E.2d 955, 959.) A section 2—1401 petition, like any other pleading, is subject to a motion to dismiss where it fails to set forth a cause of action or it is

clear on its face that the petitioner is not entitled to relief. (*Ostendorf*, 89 Ill. 2d at 279-80, 433 N.E.2d at 255-56.) Petitions for relief under section 2—1401 are addressed to the sound discretion of the trial court, and the court's ruling should not be reversed absent an abuse of that discretion. (*Collins v. Prestige Casualty Co.* (1977), 54 Ill. App. 3d 762, 370 N.E.2d 103.) In the present case, we believe that reversal is warranted.

■■ The motion to strike addressed only the legal sufficiency of the Smiths' section 2—1401 petition. We believe the petition and accompanying affidavit, though hardly models of form, are sufficient to state a cause of action. The petition successfully raises the issues of the Smiths' diligence and whether the testimony of a disinterested eyewitness, Acie Eggerson, would have resulted in a different verdict at trial.

The trial court stated that whether Eggerson's testimony would have changed the jury's decision was mere speculation. The court apparently reasoned that because Eggerson's testimony related only to the issue of liability and because the jury could have decided against the Smiths solely on the issue of damages, Eggerson's testimony could not possibly have affected the outcome of the trial. To prevail at a hearing on a section 2—1401 petition, the petitioner must ultimately show that the new evidence would have prevented judgment against him. To survive a motion to dismiss prior to actual hearing, however, the petition need only show that the new evidence could have prevented judgment against him. (*Ostendorf*, 89 Ill. 2d at 282-83, 433 N.E.2d at 256.) At the motion stage, all facts must be construed and all inferences drawn in a light most favorable to the nonmoving party. (*Panorama of Homes, Inc. v. Catholic Foreign Mission Society, Inc.* (1980), 84 Ill. App. 3d 142, 404 N.E.2d 1104.) We cannot say that Eggerson's testimony clearly could not affect the outcome of the trial. It is true that the jury may have based its decision on the issue of damages, but it is equally true that the jury may have based its decision on the issue of liability, in which case Eggerson's testimony may well have resulted in a different verdict. Because it cannot be said with certainty that the jury based its decision on the issue of damages, it cannot be said that Eggerson's testimony could not possibly have affected the outcome of the trial. This is sufficient to survive a motion to dismiss. Further, it has been held that the testimony of a preoccurrence witness which relates to facts and circumstances supporting plaintiff's theory of his case is sufficient to warrant a new trial. (*Drehle v. Fleming* (1970), 129 Ill. App. 2d 166, 263 N.E.2d 348.) We do not comprehend how the testimony of the

*sole neutral* occurrence eyewitness could not but have a significant impact on the jury's assessment of the other testimony. Surely the testimony of such a presumably disinterested occurrence eyewitness which corroborates plaintiffs' testimony is sufficient to defeat a motion to dismiss in a section 2—1401 proceeding as to the issue of newly discovered evidence preventing an adverse judgment. We hold, therefore, that this cause must be remanded to permit the defendants to answer and, if said answer controverts central facts of the petition, for an evidentiary hearing on the merits of the petition. *Ostendorf*, 89 Ill. 2d at 286-87, 433 N.E.2d at 259; *Manning v. Meier* (1983), 114 Ill. App. 3d 835, 449 N.E.2d 560.

■ The defendants also argue that the trial court erred in finding that the Smiths had been diligent in their attempt to locate Eggerson. Again, it appears that the trial court prematurely ruled on the merits of the petition. At the hearing on the motion to strike, only the legal sufficiency of the petition was at issue. The petition alleges that the Smiths did not have a correct address for Eggerson and that he had changed address several times. The petition also incorporates several documents, filed before the hearing, demonstrating the Smiths' attempt to locate Eggerson. While this may have been sufficient to defeat a motion to dismiss, the defendants must be provided with the opportunity to challenge the merits of the Smiths' allegations of diligence.

We also note that in their brief the Smiths argue that the defendants misidentified Eggerson as "A. Eggers" during discovery and failed to produce the accident report Eggerson had filled out at Gittenger's request. The defendants respond that Eggerson's signature appears to read "Eggers" and that they denied under oath having possession of the accident report. In *Ostendorf*, our supreme court stated:

> "As regards petitioners' diligence in discovering the ground for relief, we think a litigant exercises ordinary diligence in pretrial discovery when he poses interrogatories reasonably calculated to elicit the information important to his case. If his opponent then suppresses information within the scope of the interrogatories in such a way as to prevent the inquirer from realizing what has occurred, the failure to discover the information is the result of the former's fault, not of the latter's negligence." *(Ostendorf*, 89 Ill. 2d at 284-85, 433 N.E.2d at 258.)

The questions of whether the misinformation about Eggerson's name was the result of fraudulent concealment by the defendants and, if

not, how the mistake bears on the issue of diligence must be resolved by the trial court before it can properly determine whether diligence was shown. This also warrants a remand.

■ Finally, the Smiths argue that their motion for default judgment against National Carriers should have been granted. They maintain that National Carriers was properly served with process but failed to appear. National Carriers responds that it was never properly served with process with respect to the Smiths' section 2—1401 petition. Out-of-State service requires that an affidavit of the server be filed stating the time, place and manner of service (Ill. Rev. Stat. 1987, ch. 110, par. 2—208), and National Carriers contends that while summons was served on it in Kansas, no proper affidavit of service was returned. The record reveals that National Carriers filed a special and limited appearance arguing that the trial court did not have personal jurisdiction over it and that no proper service of process had been made. National Carriers was subsequently served with summons in Kansas, but the affidavit of service was returned blank. The summons itself indicated the time, place and manner of service, but was unsworn. National Carriers was not a party to the motion to strike the Smiths' section 2—1401 petition. After the dismissal of their section 2—1401 petition, the Smiths filed a motion for default judgment against National Carriers, but never called this· motion for a hearing. This issue is therefore not properly before this court.

The judgment of the circuit court of Fayette County is reversed and remanded for an evidentiary hearing on the Smiths' section 2—1401 petition.

Reversed and remanded.

HARRISON and CHAPMAN, JJ., concur.