2021 IL App (2d) 200533-U
No. 2-20-0533
Order filed September 30, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| JAMES HOLDER | ) | Appeal from the Circuit Court |
| | ) | of Winnebago County. |
| Petitioner and Respondent-Appellee, | ) | |
| | ) | |
| v. | ) | No. 19-MR-29 |
| | ) | |
| THE WINNEBAGO COUNTY STATE'S | ) | |
| ATTORNEY'S OFFICE, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | Honorable |
| (The Department of State Police, Intervenor | ) | Donna R. Honzel, |
| and Petitioner-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court.
Presiding Justice Bridges and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's "denial" of the Department of State Police's section 2-1401 petition was actually a dismissal for failure to allege a meritorious defense to the trial court's order directing the Department to issue petitioner a FOID card. The dismissal was improper, as the Department's petition did indeed allege a meritorious defense, namely that due to petitioner's prior felony convictions in Texas—which restricted his right under Texas law to possess firearms—he was barred under federal law from possessing any firearms.

¶ 2    The Department of State Police (Department) appeals from the denial of its petition under section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2018)). The petition sought to vacate the trial court's order granting James Holder's petition under section 10 of the Firearm Owners Identification Card Act (FOID Card Act) (430 ILCS 65/10(c) (West 2018)) and directing the Department to issue Holder a Firearm Owners Identification Card (FOID Card). The Department contends that, in granting Holder's section 10 petition, the trial court misinterpreted the United States Supreme Court's holding in *Caron v. United States*, 524 U.S. 308 (1998), concerning which offenders are federally prohibited from owning firearms. As relief, the Departments asks us to reverse both the judgment denying its section 2-1401 petition and the prior judgment that granted Holder's section 10 petition and directed the Department to issue him a FOID card. We agree with the Department that the trial court misread *Caron* and that federal law bars Holder from obtaining a FOID card. However, while this is a sufficient basis for us to vacate the denial of the Department's section 2-1401 petition, it is not a sufficient basis for us to disturb the judgment granting Holder's section 10 petition. Therefore, we vacate the dismissal of the Department's petition and remand the cause for further proceedings under section 2-1401.

¶ 3                                      I. BACKGROUND

¶ 4    On January 22, 2019, Holder filed a petition under section 10 of the FOID Card Act requesting an order directing the Department to issue him a FOID card. He alleged that he had applied to the Department for a FOID card and that his request was denied based on his four felony convictions in Texas, the most recent of which was in 1988. He further alleged that he had pursued an administrative appeal and that the Department never responded. Holder asserted that he met the standards for issuance of a FOID card despite the Texas convictions. As required by section 10(b) (430 ILCS 65/10(b) (West 2018)), Holder served his petition on the Winnebago County

State's Attorney's Office, which he listed as respondent. The State's Attorney's office filed an appearance on its own behalf.

¶ 5 On May 23, 2019, the trial court held a hearing on Holder's petition and received testimony. That day, the trial court issued an order, "over the objection of the State," directing the Department to issue a FOID card to Holder.

¶ 6 Over a year later, on June 10, 2020, the Department filed a petition under section 2-408 of the Code (735 ILCS 5/2-408 (West 2018)) seeking leave to intervene as of right. The Department sought to intervene so that it could file a petition under section 2-1401 of the Code for relief from the May 23, 2019, order. The Department asserted:

"[The Department] should be granted leave to intervene because it (1) timely filed this petition to intervene once it became aware of the May 23, 2019 Order ***; (2) the interests that it possesses were not adequately represented by the State's Attorney prior to the issuance of the May 23, 2019 Order; and (3) [the Department] is the agency charged with enforcing the [FOID Card Act] and issuing FOID cards to those who meet the statutory requirements."

In support of its contention that the State's Attorney's office did not adequately represent its interests, the Department noted that the record did not reflect that Holder's firearms rights had been restored in Texas following his convictions, which, according to the Department, was a necessary condition for his obtaining a FOID card in Illinois through a section 10 petition.

¶ 7 The Department included its proposed section 2-1401 petition as an exhibit to its section 2-408 petition. That petition recited the standard from *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986): "To be entitled to relief under section 2-1401, the petitioner must affirmatively set forth specific factual allegations supporting each of the following elements: (1) the existence of a

meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the [petition]."

¶ 8    The Department alleged in its section 2-1401 petition that it had a meritorious defense in that Holder was federally barred from possessing firearms. On the element of diligence, the Department alleged that it "was not served with the section 10(c) Petition and was unable to participate in the underlying proceedings." However, it "ha[d] been diligent in seeking relief under section 2-1401 after it became aware of the May 23, 2019 Order."

¶ 9    Turning to the merits of its defense, the Department noted that, when Holder applied for a FOID card, the Department denied the application because Holder had four Texas felony convictions. The Department contended that the denial was authorized by section 8(c) of the FOID Card Act (430 ILCS 65/8(c) (West 2018)), which provides that the Department may deny a FOID card to "[a] person convicted of a felony under the laws of this or any other jurisdiction." The Department further maintained that Holder's action in the trial court to challenge the denial had no merit. The Department cited section 10(b) of the FOID Card Act, which provides that trial court "shall not issue" an order requiring the Department to issue a FOID card "if the petitioner is otherwise prohibited from obtaining, possessing, or using a firearm under federal law" (430 ILCS 65/10(b) (West 2018)). The Department contended that Holder, as a convicted felon, was federally prohibited from possessing a firearm by section 922(g)(1) of the federal Gun Control Act of 1968 (Gun Control Act) (18 U.S.C. § 922(g)(1) (2012)). Section 922(g)(1) prohibits felons from possessing firearms connected to interstate commerce:

"(g) It shall be unlawful for any person—

(1) who has been *convicted* in any court of a crime punishable by imprisonment for a term exceeding one year;

* * *

> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." (Emphasis added.) 18 U.S.C. § 922(g)(1) (2012).

Section 921(a)(20) of the Gun Control Act (18 U.S.C. § 921(a)(20) (2012)) supplies a particular definition of "conviction" for purposes of section 922(g)(1). Section 921(a)(20) provides in relevant part:

> "What constitutes a conviction of such a [disqualifying] crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, *unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.*" (Emphasis added.) 18 U.S.C. § 921(a)(20) (2012).

The italicized language is sometimes called the "unless" clause, and we follow that convention. In its petition, the Department pointed out that the United States Supreme Court held that the "unless" clause applied when "[t]he State has singled out the offender as more dangerous than law-abiding citizens" by restricting his or her right to possess firearms. *Caron*, 524 U.S. at 315. The Department contended that Holder fell within the "unless" clause as interpreted in *Caron* because, under Texas law, a felon who completes supervision can possess a firearm, but only in the premises where the felon lives (Tex. Penal Code Ann. § 46.04(a)(2) (West 2012)). The Department

concluded that section 922(g)(1) prohibited Holder from possessing a firearm and thus he was ineligible under section 10(b) for a FOID card.

¶ 10    To support its allegation of diligence in (1) bringing its defense before the trial court and (2) filing its section 2-1401 petition, the Department included affidavits from Jessica Trame, the chief of the Department's Firearms Services Bureau (FSB), and Samantha Grund-Wickramasekera, the assistant attorney general representing the Department in its attempt to intervene.

¶ 11    Trame averred: (1) on October 31, 2016, the Department denied Holder's request for a FOID card; (2) the Department did not participate in the proceedings on Holder's section 10 petition; (3) on June 4, 2019, the FSB received a letter from Holder's counsel along with a copy of the May 23, 2019, order directing the Department to issue Holder a FOID card, but "no action was taken by the FSB staff"; (4) on August 29, 2019, the FSB received a second letter from Holder's counsel along with a petition for a rule to show cause, but again "no action was taken by the FSB staff"; (5) on December 13, 2019, the FSB received a " 'Request for FOID Appeal,' " and "[t]his time the document was brought to [Trame's] attention as Bureau Chief," whereupon she immediately notified the Department's legal counsel; (6) on January 7, 2020, after receiving notice of Holder's "FOID Appeal," the Department sought representation by the Office of the Attorney General; and (7) on or before January 28, 2020, Holder's background and criminal history were compiled and provided to the Department's legal counsel.

¶ 12    Grund-Wickramasekera averred: (1) on January 7, 2020, the attorney general received the Department's request for legal representation in relation to the trial court's May 23, 2019, order directing the Department to issue Holder a FOID card; (2) on January 8, 2020, Grund-Wickramasekera was assigned to the case; (3) on January 28, 2020, the Department notified her

of Holder's background and criminal history; (4) in February 2020, as part of her investigation, she communicated with the Winnebago County State's Attorney's Office and with Holder's counsel; (5) in March 2020, the stay-at-home orders related to COVID-19 were issued, requiring a "challenging" adjustment to business operations; (6) in April 2020, after completing her investigation, she began drafting the Department's petition to intervene and its petition for relief from judgment; (7) in May 2020, she continued drafting the documents, conferring with the attorney general's appellate division on the application of case law; and (8) in mid-May 2020, drafts of the pleadings were sent to the Department for review.

¶ 13     Holder's response addressed the merits of both the section 2-408 petition and the proposed section 2-1401 petition.  First, Holder asserted that the section 2-408 petition was untimely.  He claimed that, even allowing for COVID-19 related disruptions, the Department's delay of over a year before petitioning to intervene was unreasonable.  Second, he maintained that the section 2-1401 petition did not assert a meritorious defense.  Citing *Johnson v. Department of State Police*, 2020 IL 124213, Holder claimed that the trial court's very act of directing the Department to issue Holder a FOID card restored Holder's civil rights (or at least the civil right of firearm ownership) for purposes of section 921(a)(20) of the Gun Control Act.  Thus, Holder's Texas convictions should not be deemed "convictions" that prohibit him under section 922(g)(1) of the Gun Control Act from possessing firearms.  Holder, therefore, asked the trial court to deny the Department's petition to intervene.  He also sought a contempt finding against the Department based on its failure to grant him a FOID card despite the May 23, 2019, order.

¶ 14     In reply, on the issue of diligence, the Department noted that it was not named in Holder's suit.  It also emphasized that once Trame herself learned of Holder's request for an appeal, she immediately informed the Department's legal counsel.

¶ 15     On the issue of a meritorious defense, the Department noted that federal and Illinois cases agree that whether a state conviction triggers a federal prohibition on the possession of firearms depends on the law of the state in which the conviction occurred—in Holder's case, Texas. The Department argued that Holder misinterpreted *Johnson*, which held only that Illinois courts have the authority to remove prohibitions created by *Illinois* convictions—not the foreign convictions at issue here.

¶ 16     At a hearing on the petition to intervene, the Department conceded that the FSB had twice received the May 23, 2019, order, but that no action was taken until Trame herself received notice of that order on December 13, 2019, and then immediately requested that the attorney general's office represent the Department. Production within the Department was slowed during the transition to remote work. The Department suggested that the issue of whether its section 2-408 petition was timely overlapped with the issue of whether it could show diligence in its section 2-1401 petition.

¶ 17     The parties also argued the merits of the Department's position that Holder was federally barred from possessing firearms. Holder's counsel contended that, where Texas permitted him to possess a firearm—albeit not outside his home—it would be illogical to hold that he fell within the ambit of the "unless" clause ("unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms" (18 U.S.C. § 921(a)(20) (2012)). Counsel argued:

> "I would say that if Holder can possess a gun in the State of Texas then that's, that's
> the cards of the matter. That is the rule for the prohibitor. He can't carry a gun everywhere
> in Texas like everyone else in Texas can, but he can have a gun. The language in [section
> 921(a)(2) of the Gun Control Act] talks about shipping, transporting, receiving. [Section

46.04 of the Texas Penal Code (Texas Penal Code Ann. § 46.04(a) (West 2018))] just says possess.

> Logically, how can a person possess a firearm in their home if they can't have it shipped to them if they can't buy it and take it to their home? I think a logic[al] construction of that statute means, yeah, they can get a firearm, yeah they can have it in their home. Can they carry it? Maybe not, but they can have it in their home."

¶ 18 The Department rejoined that, under the "unless" clause as interpreted in *Caron*, Holder was not permitted to "possess" firearms, even if the restriction was qualified.

¶ 19 The trial court allowed additional briefing on how section 921(a)(20) of the Gun Control Act affected Holder's eligibility for a FOID card. Holder, invoking what he contended was the plain meaning of section 921(a)(20), maintained that since Texas law allowed him to possess firearms, the "unless" clause was inapplicable. He asserted that nothing in federal law "says that State rights must be restored 'totally' or 'fully.' " The Department continued to argue that, under *Caron* and its progeny, the "unless" clause applies if there is anything short of a complete restoration of firearms rights. Thus, Texas's qualified restriction on Holder's ability to possess a firearm triggered the federal prohibition. The Department reemphasized the narrowness of *Johnson*'s holding: that Illinois courts can remove restrictions on firearms possession—and thus remove the federal prohibition—for *Illinois* convictions alone.

¶ 20 The court granted the Department's section 2-408 petition to intervene. The court criticized the Department for its delay but concluded that intervention would avoid further litigation:

> "All that notwithstanding because it's a practical matter, if the petition was not allowed there'd be another lawsuit and that just protracts the litigation, increases cost and I don't

think does substantial justice which, obviously, we're always trying to do substantial justice.

So *** I think the way this has been presented and argued, I think that was kind of foregoing [*sic*] conclusion but I think I do have to make that specific finding on the record that *** the [Department] is allowed to intervene. *** I think everybody *** went about it as a—conclusion and with all that said I think there just has to be that explicit indication."

¶ 21     The court then addressed the Department's section 2-1401 petition. The court opined that, under *Caron*, a restriction that limits *where* a person can possess firearms does not trigger the "unless" clause. The court did not express any opinion on the Department's diligence under the section 2-1401 standards. The court's written order stated that the petition was "denied on the merits." The Department timely appealed.

¶ 22                                    II. ANALYSIS

¶ 23     The Department argues that the trial court erred as a matter of law when it denied its section 2-1401 petition on the ground that section 921(a)(20)'s "unless" clause did not apply to Holder despite Texas's restriction on his possession of firearms.

¶ 24     Holder has not filed a brief. We follow the guidelines in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976), for resolving an appeal in the absence of an appellee's brief:

"We do not feel that a court of review should be compelled to serve as an advocate for the appellee or that it should be required to search the record for the purpose of sustaining the judgment of the trial court. It may, however, if justice requires, do so. Also, it seems that if the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief, the court of review should decide the

merits of the appeal. In other cases[,] if the appellant's brief demonstrates *prima facie* reversible error and the contentions of the brief find support in the record[,] the judgment of the trial court may be reversed."

Illinois reviewing courts have taken *Talandis* to give them three options: (1) when justice requires, actively seek bases for sustaining the judgment of the trial court; (2) when the issues are simple, decide the case on the merits; and (3) reverse when the appellant's brief shows *prima facie* error. *Thomas v. Koe*, 395 Ill.App.3d 570, 577 (2009). Here, we elect to resolve the appeal in the absence of appellee's brief because the issues are straightforward, and appellant's brief demonstrates *prima facie* error.

¶ 25    "[S]ection 2-1401 of the Code represents a comprehensive statutory procedure authorizing a trial court to vacate or modify a final order or judgment in civil and criminal proceedings." *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 31. "As an initial pleading, a section 2-1401 petition is procedurally the counterpart of a complaint and subject to all the rules of civil practice that that character implies." *Blazyk v. Daman Express, Inc.*, 406 Ill. App. 3d 203, 207 (2010); see also *Ostendorf v. International Harvester Co.*, 89 Ill. 2d 273, 279 (1982). Thus, it should be treated procedurally more like a complaint than a motion. *Studentowicz v. Queen's Park Oval Asset Holding Trust*, 2019 IL App (1st) 181182, ¶ 9. Accordingly, dispositive motions—such as motions to dismiss for failure to state a claim and motions for judgment on the pleadings—are proper in section 2-1401 proceedings.

¶ 26    Our supreme court has recognized at least two types of section 2-1401 petitions. One type is what the supreme court in *Airoom* recognized as presenting a "fact-dependent challenge" to a judgment. *Walters*, 2015 IL 117783, ¶ 50 (citing *Airoom*, 114 Ill. 2d at 221). In *Walters*, the court characterized that type of petition as follows:

"*Airoom* established that to be entitled to relief from a final judgment or order under section 2-1401, the petition must set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief. [Citation.] Under *Airoom*, the quantum of proof necessary to sustain a section 2-1401 petition is a preponderance of the evidence. [Citation] The question of whether relief should be granted lies within the sound discretion of the circuit court, depending on the facts and equities presented. [Citation.] Accordingly, this court held in *Airoom* that a reviewing court will reverse the circuit court's ruling on the petition only if it constitutes an abuse of discretion." *Walters*, 2015 IL 117783, ¶ 37.

Another type of section 2-1401 petition raises a purely legal challenge to the judgment. The typical example is a petition that challenges a judgment as void (*Walters*, 2015 IL 117783, ¶ 47), but the *Walters* court also cited the example of a claim, brought by a person civilly committed as a sexually dangerous person, that his counsel was ineffective in the commitment proceeding (*Walters*, 2015 IL 117783, ¶ 41 (citing *People v. Lawton*, 212 Ill. 2d 285, 297 (2004)).[1] The *Walters* court held that the disposition of a section 2-1401 petition that raises purely legal issues is subject to *de novo* review. *Walters*, 2015 IL 117783, ¶ 47 (addressing the use of the *de novo* standard in *People v. Vincent*, 226 Ill. 2d 1, 5 (2007)). The *Walters* court further recognized that the procedural posture

_____

[1] In *Aurora Loan Services, LLC v. Pajor*, 2012 IL App (2d) 110899, ¶¶ 15-19, we identified another example: the descendant of an action for a bill of review, which seeks relief for errors of law apparent on the face of the record and does not require a showing of diligence.

of the case can determine the standard of review; judgments on the pleadings and dismissals (such as for failure to state a cause of action) are reviewed *de novo*. *Walters*, 2015 IL 117783, ¶ 47.

¶ 27     The Department argues that we should "review[ ] legal questions raised by the circuit court's denial of a section 2-1401 petition *de novo*, and any factual questions under a more deferential standard." It contends that "this case presents solely a question of law, indeed one of statutory construction, that is subject to *de novo* review." Pointing to *Caron*, it argues that the trial court erred as a matter of law in denying the petition.

¶ 28     We agree that our standard of review is *de novo*. This is so even though the Department presented its petition as an *Airoom*-type petition and pleaded the diligence elements. Since the trial court's order stated that it was *denying* the petition on the merits, it appears on the surface that, under *Walters*, we should review for an abuse of discretion. That impression, however, is overcome by two facts. First, none of Holder's filings in the trial court was a response—in the sense of a responsive pleading answering a petition—to the Department's section 2-1401 petition. Second, at the hearing on the Department's petitions, the trial court made clear that, as a matter of law, it was rejecting the Department's proposed meritorious defense to Holder's petition under section 10. Thus, before Holder had filed a responsive pleading, the court concluded that his arguments against the applicability of the "unless" clause were sufficient to dispose of the section 2-1401 petition. Thus, the trial court's disposition was more akin to a dismissal for failure to state a cause of action than to a denial. Under *Walters*, such a dismissal is subject to *de novo* review. *Walters*, 2015 IL 117783, ¶ 47.

¶ 29     We hold that the trial court erred in rejecting, as a matter of law, the Department's defense to Holder's claim for a FOID card. We conclude that, per *Caron*'s interpretation of the "unless" clause, Holder was barred from possessing a firearm under federal law.

¶ 30    In *Caron*, the issue was whether the "unless" clause was triggered by a Massachusetts law that allowed the defendant to possess rifles or shotguns but prohibited him from possessing a handgun outside his home or business. *Caron*, 524 U.S. at 311. As the Court noted, under section 922(g)(1) of the Gun Control Act, "a person convicted of a crime punishable by more than one year in prison may not possess any firearm" (*Caron*, 524 U.S. at 309 (citing 18 U.S.C. § 922(g)(1)). Which judgments count as "convictions" under section 922(g)(1) is determined by section 921(a)(20) of the Gun Control Act. *Caron*, 524 U.S. at 312-13. As noted, section 921(a)(20) states:

> "What constitutes a conviction of such a [disqualifying] crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, *unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.*" (Emphasis added.) 18 U.S.C. § 921(a)(20) (2012).

¶ 31    In *Caron*, the parties agreed that, "[a]side from the unless clause," the civil rights of the defendant had been restored by operation of Massachusetts law. *Caron*, 524 U.S. at 313. Thus, the question was "whether the handgun restriction activates the unless clause, making the convictions count under federal law." *Caron*, 524 U.S. at 313.

¶ 32    The defendant argued that "the unless clause allows an offender to possess what state law permits him to possess, and nothing more." *Caron*, 524 U.S. at 314. The Court recognized the commonsense appeal of this approach, but held that such a reading was irreconcilable with the language of section 921(a)(20):

"The unless clause is activated if a restoration of civil rights 'expressly provides that the person may not ... possess ... firearms.'  18 U.S.C. § 921(a)(20).  Either the restorations forbade possession of 'firearms' and the convictions count for all purposes, or they did not and the convictions count not at all.

    \*\*\*

Under [the more prohibitive] approach, a state weapons limitation on an offender activates the uniform federal ban on possessing any firearms at all.  This is so even if the guns the offender possessed were ones the State permitted him to have.  The State has singled out the offender as more dangerous than law-abiding citizens, *and federal law uses this determination to impose its own broader stricture*."  (Emphasis added.)  *Caron*, 524 U.S. at 314-15.

The Court adopted the more prohibitive approach:

"Congress \*\*\* provid[ed] that the law of the State of conviction, not federal law, determines the restoration of civil rights as a rule.  While state law is the source of law for restorations of other civil rights, however, it does not follow that state law also controls the unless clause.  Under the [more prohibitive] approach, with which we agree, the federal policy still governs the interpretation of the unless clause.  We see nothing contradictory in this analysis.  Restoration of the right to vote, the right to hold office, and the right to sit on a jury turns on so many complexities and nuances that state law is the most convenient source for definition.  As to the possession of weapons, however, the Federal Government has an interest in a single, national, protective policy, broader than required by state law. [The less prohibitive] approach would undermine this protective purpose."  *Caron*, 524 U.S. at 316.

The Court concluded that the Massachusetts firearms restriction brought the defendant within the ambit of the "unless" clause, and thus the Court affirmed a sentencing enhancement based on the defendant's violation of section 922(g)(1). *Caron*, 524 U.S. at 309, 316-17.

¶ 33    The precise facts in *Caron* are critical to understanding the trial court's error here: the defendant in *Caron* was under a restriction that allowed him to possess rifles, shotguns, and handguns, but prohibited him from possessing a handgun outside his home or business. *Caron*, 524 U.S. at 313. The Court held that the handgun restriction was enough to activate the "unless" clause. *Caron*, 524 U.S. at 316-17. The defendant in *Caron* was under less severe restrictions than Holder, whom Texas law bars from possessing *any firearm* outside his home. If the restriction faced by the defendant in *Caron* activated the "unless" clause, then so does the restriction here.

¶ 34    The trial court distinguished *Caron* on the ground that the restriction in *Caron* was as to the *type* of firearms that could be possessed, as opposed to the Texas law at issue, which only restricted *where* Holder may possess firearms, *i.e.*, outside the home. Our reading of *Caron*, however, does not support the conclusion that location restrictions fall outside the ambit of the "unless" clause. The question in *Caron* was indeed whether Massachusetts' prohibition of possessing certain *types* of weapons implicated the "unless" clause. In concluding that it did, however, the court noted that the "unless" clause applies where "[t]he State has singled out the offender as more dangerous than law-abiding citizens, and federal law uses this determination to impose its broader stricture." *Caron*, 524 U.S. at 315. This is exactly what the Texas law did when it restricted Holder from possessing any firearms outside his home. *Cf. United States v. Kyllonen*, 774 Fed. App'x 212, 213 (5th Cir. 2019) (*per curium*) (Michigan concealed weapon restriction triggered the "unless" clause and prohibited the defendant from possessing a firearm under federal law); *United States v. Sanford*, 707 F.3d 594, 596 (6th Cir.) (inability of the defendant to obtain a

concealed weapons permit restricted his ability to "transport" a firearm which was sufficient to trigger the "unless" clause).

¶ 35     The Court in *Caron* was explicit in embracing the consequence of the rule it adopted: a *partial* state restoration of an offender's firearms rights leaves the offender under a *blanket* federal prohibition.  Moreover, the Court made clear that, although federal restrictions may be broader than state restrictions, it is still the law of the *state of conviction* that determines whether those federal restrictions are triggered for a particular individual.

¶ 36     For this reason, Holder's citation to *Johnson* availing.  In *Johnson*, the supreme court held that civil rights in Illinois include firearms rights.  *Johnson*, 2020 IL 124213, ¶ 37.  Thus, according to *Johnson*, proceedings under section 10 of the FOID Card Act are part of Illinois's path to restoring a person's civil rights—the manner of restoration contemplated in section 921(a)(20) of the Gun Control Act.  *Johnson*, 2020 IL 124213, ¶¶ 26-27.  In other words, section 10(b) of the FOID Card Act does not prevent a court from granting a section 10 petition where that relief is sufficient to remove the federal prohibition.  *Johnson*, 2020 IL 124213, ¶¶ 30, 40.  However, citing *Caron*, *Johnson* recognized that "[t]he law of the *convicting jurisdiction* controls whether civil rights have been restored." (Emphasis added.)  *Johnson*, 2020 IL 124213, ¶ 26 (citing *Caron*, 524 U.S. at 316).  Thus, a court may grant a section 10 petition when a restriction on firearms rights is the *only* impediment to restoring a person's federal firearms rights.  A court cannot grant a section 10 petition where, as here, a restriction *from another jurisdiction* impedes the restoration of the person's federal firearms rights.

¶ 37     Essentially, Holder's restrictions were similar to those in *Caron*: Holder was allowed to carry his firearm in his dwelling house, but he was otherwise prohibited from possessing firearms anywhere else in Texas.  As in *Caron*, this restriction was sufficient to trigger the "unless" clause.

Accordingly, we hold that the trial court was incorrect in concluding that the Department's defense—that Holder remains federally prohibited from possessing firearms—fails as a matter of law. As this was the only basis for the dismissal of the Department's section 2-1401 petition, we hold that the dismissal was erroneous.

¶ 38 As for the appropriate relief, we note that the Department makes an ambitious request:

> "For the[ ] reasons [stated in the brief, the Department] asks that this court reverse the circuit court's judgment to the extent that it denied its section 2-1401 petition for relief from the judgment on the merits, *thereby reversing the orders requiring it to issue a FOID card to \*\*\* Holder*." (Emphasis added.)

The Department does not explain why, even if the trial court made an error of law in the disposition of the petition, the appropriate relief would be to disturb the May 23, 2019, judgment directing the Department to issue Holder a FOID card. The customary remedy for improper dismissal is a remand for further proceedings, not award of the relief that the prevailing party sought in the dismissed pleading. As noted, the Department presented its petition as an *Airoom*-type petition, complete with diligence allegations. The determination whether a section 2-1401 petitioner has been diligent invokes the trial court's discretion. *Walters*, 2015 IL 117783, ¶ 37. Here, the trial court has not yet applied that discretion, as its dismissal was based solely on the "meritorious defense" element. Nor does the Department argue that it satisfied the diligence elements as a matter of law. Therefore, the proper relief is to vacate the dismissal and remand for further proceedings on the section 2-1401 petition.

¶ 39                                    III. CONCLUSION

¶ 40    For the reasons stated, we vacate the judgment of the circuit court of Winnebago County

dismissing the Department's section 2-1401 petition, and remand the cause for further proceedings

under section 2-1401 consistent with this order.

¶ 41    Vacated and remanded.