**2021 IL 126153**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 126153)

THOMAS BROWN, Appellant, v. THE ILLINOIS STATE POLICE, Appellee.

*Opinion filed November 18, 2021.*

JUSTICE OVERSTREET delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Garman, Theis, Neville, and Michael J. Burke concurred in the judgment and opinion.

Justice Carter took no part in the decision.

**OPINION**

¶ 1     This appeal involves the correlation between Illinois and federal firearms statutes and how those statutes impact the revocation of a Firearm Owners Identification (FOID) card in Illinois. The Illinois State Police (ISP) revoked Thomas Brown's FOID card due to a conviction of a misdemeanor crime of domestic violence (MCDV) that Brown received in California in 2001. The

California conviction prevented Brown from possessing firearms under federal law. Brown brought a petition in the circuit court of Putnam County, seeking relief from ISP's decision. After an evidentiary hearing, the circuit court granted Brown's petition, reversed ISP's decision, and ordered ISP to issue Brown a FOID card. ISP appealed. The appellate court reversed the circuit court's judgment. 2020 IL App (3d) 180409, ¶ 28. We allowed Brown's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2019). For the following reasons, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 2                                    BACKGROUND

¶ 3        In September 2001 in the state of California, Brown pled guilty to a misdemeanor of inflicting corporal injury to a spouse.[1] See Cal. Penal Code § 273.5(a) (West 2001). Pursuant to the plea agreement, Brown was sentenced to 36 months of court probation, performed community service, and incurred a fine.

¶ 4        Brown held a FOID card in Illinois for many years after the California conviction. In 2013, he submitted a renewal FOID card application to ISP. On the application, Brown answered "no" to the question of whether he had ever been convicted of domestic battery or a substantially similar offense. In 2016, Brown attempted to purchase a firearm from a federal firearms dealer, which prompted ISP to conduct a federal background check on Brown. The background check revealed Brown's California conviction.

¶ 5        Section 8(*l*) of the Firearm Owners Identification Card Act (FOID Card Act) authorizes ISP to revoke a FOID card where the individual "has been convicted of domestic battery *** or a substantially similar offense in another jurisdiction." 430 ILCS 65/8(*l*) (West 2016). Section 8(n) of the FOID Card Act authorizes ISP to revoke a FOID card where the individual is "prohibited from acquiring or possessing firearms or firearm ammunition by *** federal law." *Id.* § 8(n). The federal law at issue in this case is section 922(g)(9) of the federal Gun Control Act of 1968 (FGCA), which forbids a person from possessing firearms if he or she has been convicted in any court of an MCDV. See 18 U.S.C. § 922(g)(9) (2012). ISP

---

[1]This offense is designated as a "wobbler," which may be charged as either a felony or a misdemeanor.

sent Brown a letter dated July 11, 2016, informing him that his FOID card was revoked due to his California conviction. After receiving the letter, Brown submitted a request to ISP for a FOID appeal. ISP reviewed the appeal and affirmed its decision revoking Brown's FOID card because of the California conviction.

¶ 6       On August 12, 2016, pursuant to section 10 of the FOID Card Act (430 ILCS 65/10 (West 2016)), Brown filed in the circuit court a petition seeking relief from ISP's revocation of his FOID card. The petition indicated that on or about September 22, 2001, Brown pled guilty to a charge of domestic battery in Los Angeles County, California, after an incident between Brown and his wife at that time—Suzette "Suzie" Brown.

¶ 7       The petition alleged that ISP revoked Brown's FOID card because of the California conviction and reversal of that decision was warranted because Brown was in compliance with the requirements of section 10(a) of the FOID Card Act (*id.* § 10(a)), thereby entitling him to relief. The petition further alleged that relief was warranted because section 10(c)(4) of the FOID Card Act (*id.* § 10(c)(4)) and section 922(g)(9) of the FGCA (18 U.S.C. § 922(g)(9) (2012)) were unconstitutional under the second amendment of the United States Constitution (U.S. Const., amend. II) as applied to Brown and because section 10(c)(4) of the FOID Card Act (430 ILCS 65/10(c)(4) (West 2016)) was unconstitutional under article I, section 22, of the Illinois Constitution (Ill. Const. 1970, art. I, § 22) as applied to Brown.

¶ 8       On September 15, 2016, ISP filed in the circuit court a motion to dismiss Brown's petition, alleging, *inter alia*, that section 10 of the FOID Card Act precludes relief when federal law prohibits a petitioner from possessing firearms. To that regard, ISP contended that section 922(g)(9) of the FGCA prohibits possession of a firearm by any person convicted of an MCDV. ISP asserted that, because Brown's California conviction constituted an MCDV, he was barred from possessing firearms under the FGCA and thus precluded from relief under section 10 of the FOID Card Act. ISP further alleged in its motion to dismiss that section 8 of the FOID Card Act precluded relief because Brown's conviction occurred in California—a foreign jurisdiction. Finally, ISP alleged that Brown's constitutional claims did not merit the circuit court's consideration because the claims were

premature. On March 3, 2017, the circuit court entered an order denying ISP's motion to dismiss.

¶ 9        On April 5, 2018, the case proceeded to an evidentiary hearing. Brown testified that he resides in Putnam County, Illinois, has been employed by XPO Logistics in La Salle for 14 years as a truck driver, and is licensed to transport hazardous materials. Brown previously worked for other trucking companies, including Gazelle Transportation, by which he was employed as a team driver with his former wife, Suzie Brown.

¶ 10       Brown testified that he was never convicted of a felony but that, in September 2001, he was convicted of the misdemeanor of inflicting corporal injury to a spouse in California, after pleading guilty to a charge involving an incident between him and Suzie. Brown described the incident leading to the conviction, indicating that, when he and Suzie were driving as a team, they were scheduled to pick up a shipment in California. The lading order for the shipment was canceled, so Brown and Suzie rented a motel room and went to a nearby bar for a few drinks. Brown testified that, after being at the bar for a while, Suzie went back to the motel room while Brown stayed at the bar. Suzie later returned to the bar, at which time Brown left with Suzie. Brown testified that "there was a little bit of an argument going on" and "I picked her up and was carrying her, and it was kind of a playful moment in some way, and she kind of lost my balance. She kind of fell off onto the ground."

¶ 11       Brown testified that there was no firearm involved in the incident and he did not intend to hurt Suzie when she fell down his back. He stated that, after returning to the motel, he went to bed and Suzie was smoking a cigarette outside on the balcony when the police arrived. Brown indicated that, because Suzie "had a little road rash on her arm from falling off, they considered that there battery [*sic*]." He testified that, other than the road rash, Suzie was not injured, she did not seek medical treatment, and she did not call the police. He added that Suzie "was just as much disturbed at what was going on as I was." Brown testified that he and Suzie had since dissolved their marriage and remained on good terms. He recalled that they drove the truck together for eight years and, as time went on, they decided to separate. Brown indicated that he was never involved in any occurrences of domestic violence other than the incident in California.

¶ 12        Brown testified that, after he was arrested in California, he spent three days in jail before his court date. He described the situation as one "where I didn't have much choice to do [*sic*]." He explained that he was making arrangements to pay his $5000 bond when he was offered a plea agreement. Brown indicated that his employer instructed him to accept the plea offer, which he did "to get out of the situation." Brown testified that "for me to take the plea bargain it was supposed to be court supervision and three years of probation and never be seen of it again [*sic*]." Brown confirmed that "I was under the impression it was court supervision." He stated that the judge waived a restraining order between him and Suzie so they could continue driving the truck together and, "from that point, we went on, I did my stuff, went back to court. Everything was fine. And that's *** the last I heard about it." Brown emphasized that, from the outset, he believed that he would only receive court supervision and he did not discover until later that he was actually convicted. He also did not recall being advised that a guilty plea would affect his right to possess firearms.

¶ 13        Besides the California conviction, Brown testified that in 1988, when he was a minor, he was convicted in Minnesota for assault in the fifth degree. In 2005, he was arrested for DUI in Bureau County and received court supervision. Also in 2005, he was charged with battery for his involvement in a bar fight in La Salle County. Brown explained that he was "just defending myself" and the charges were dropped. A letter dated August 10, 2016, from Putnam County Sheriff Kevin Doyle was admitted into evidence by stipulation of the parties. The letter indicated that Brown had no criminal history in Putnam County for the last seven years.

¶ 14        Brown testified that his dad gave him his first firearm for hunting about 35 years ago when he was 16 years old and that he has "always been active around guns." He completed a firearm safety course after receiving his first firearm, and he taught himself how to clean and maintain firearms. He testified that he has never used a firearm in a manner that was dangerous to himself or others. Brown first applied for and received a FOID card when he moved to Illinois 20 or 25 years ago and has used firearms for hunting and target shooting. Brown testified that he sought to currently possess firearms for his wife's protection, as she spends much time at home alone. Brown testified that his wife has a FOID card and that the revocation of his FOID card is "holding me back from teaching her how to use weapons because *** of the situation." Brown further wishes to possess a hunting permit

and to use firearms to protect his farm animals from coyotes and other predators around his property.

¶ 15        Brown testified that he purchased firearms and maintained a FOID card in Illinois until 2016 when his FOID card was revoked. He admitted that he indicated on his 2013 FOID card application that he had never been convicted of domestic battery but said he was not "trying to deny something happened, but that it was supposed to be under supervision, and I did my probation." Brown testified that he first learned of the problem with his FOID card when he attempted to purchase a firearm in 2016 and "it came back denied." Brown testified that, after his FOID card was revoked, he and his wife surrendered their firearms to the Putnam County Sheriff's Office, but the circuit court subsequently entered an order granting possession of the firearms to Brown's wife, who keeps the firearms in their home.

¶ 16        On cross-examination, Brown acknowledged that the California conviction remained on his record. He testified that he never attempted to have the conviction expunged or vacated, nor had he sought a governor's or presidential pardon for the conviction.

¶ 17        A notarized letter from Brown's former wife, Suzie, dated November 23, 2016, was admitted into evidence by stipulation of the parties. In the letter, Suzie indicated that the incident resulting in Brown's conviction occurred on September 12, 2001. She averred that she and Brown argued outside the bar near the motel, which resulted in him "picking me up over his shoulder with me climbing down his back." Suzie stated in the letter that bystanders observed the altercation and contacted the police, who came to the motel where they were staying. Suzie asserted that "I was not injured, nor do I believe there was any intent by [Brown] to cause injury to me." Suzie added that no weapon was involved in the incident.

¶ 18        Suzie confirmed in the letter that Brown continued to possess firearms after the incident in California, that she "did not feel threatened by [Brown] possessing these weapons," and that she did not believe that Brown was a danger to himself, her, or others. Suzie emphasized that she and Brown remained on friendly terms after their divorce in 2007. She noted that "I still do not believe [Brown] to be a danger to himself, to me, or to others in possessing weapons." She added that she does not believe Brown is "likely to act in a manner dangerous to public safety if his FOID card were restored" or "that restoring his FOID card would be contrary to the public

interest." Suzie concluded her letter by requesting that Brown's FOID card be restored.

¶ 19 Kari Brown testified that she met Brown 15 years ago and they married in 2010. During their courtship, Kari observed Brown participate in target practice. After they married, Kari obtained a FOID card and a firearm, completed a "Women on Target" shooting class, participated in target practice with Brown, and learned from Brown how to clean firearms. Kari testified that the revocation of Brown's FOID card "was kind of shocking to us that something that many years ago has put such a hold on our life." She explained that it has been a few years since she participated in target practice and that she has not used her firearm or any of Brown's firearms since Brown's FOID card was revoked. Kari testified that Brown has always been a safe person, that he always kept the firearms locked away, and that he was always cautious with firearms. She indicated that there was no reason to believe that Brown would act contrary to the public interest or that he would be a danger to public safety if his FOID card was restored to him. She emphasized that Brown was not a danger to her, with or without firearms.

¶ 20 Jennifer Radosevic testified that she has been employed by ISP for 20 years and currently serves as assistant bureau chief of the Firearms Services Bureau. In that capacity, Radosevic is responsible, in part, for the administration, management, and operation of FOID application processing units, FOID eligibility determination units, concealed carry units, appeals, and the Firearm Transfer Inquiry Program, all of which are within the Firearm Services Bureau.

¶ 21 Radosevic testified that the FOID card program was established in 1968 to govern the eligibility of Illinois residents to possess firearms. Radosevic explained that, before March 2015, ISP utilized paper FOID card applications in which applicants were required to complete a questionnaire that included inquiries into the applicants' criminal histories. After March 2015, options were added for applicants to complete applications online or to utilize an alternative paper application process through the Firearms Services Bureau call center.

¶ 22 Respondent's exhibit one was introduced and admitted into evidence, which Radosevic identified as Brown's ISP Firearms Services Bureau business record (FSB record), which encompassed everything ISP received in conjunction with Brown's FOID card application, including his criminal history. Radosevic affirmed

that Brown's FSB record was compiled, kept, and maintained as part of the ordinary course of business at ISP. Radosevic testified that page seven of the FSB record indicated that Brown was convicted of inflicting corporal injury to a spouse or cohabitant—a misdemeanor—and the disposition was denoted as "convicted, probation, [and] jail."

¶ 23    Radosevic testified that ISP looks for a pardon or expungement of an MCDV conviction when determining an individual's FOID card eligibility. She indicated that Brown's FOID card was revoked because his qualifying MCDV conviction was never expunged, vacated, or pardoned. Radosevic observed Brown's FOID card application, which included the following question: "Have you ever been convicted of domestic battery or a substantially similar offense of misdemeanor or felony?" Radosevic testified that Brown checked the box "no" in response to that question when the answer should have been "yes" due to the California conviction. Radosevic emphasized that Brown's application was incorrect and that consequences for providing false information on a FOID card application may include being charged with perjury, which would constitute a felony if convicted, which is another firearm prohibitor. Radosevic confirmed that there was no problem with Kari Brown taking possession of Brown's firearms because Kari's FOID card rights were not in any way affected by Brown's FOID card revocation.

¶ 24    Radosevic testified on cross-examination that Brown was convicted of aggravated domestic battery or a substantially similar offense. She explained that any misdemeanor crime with a domestic relationship and threat of force or use of force would be a qualifying offense to revoke a FOID card and, here, Brown's conviction in California for inflicting corporal injury to a spouse was a qualifying conviction under those terms. Radosevic testified that the Firearms Services Bureau uncovered Brown's California conviction after conducting a background check when Brown attempted to purchase a firearm from a licensed federal firearms dealer. After reviewing and researching the details, the Firearms Services Bureau determined that Brown's conviction was a qualifying offense and revoked Brown's FOID card on that basis. Radosevic was not aware that, in California, a person may possess a firearm 10 years after being convicted of certain qualifying offenses such as a misdemeanor or domestic battery.

¶ 25    Regarding the FOID card application question of whether the applicant had ever been convicted of domestic battery or a substantially similar offense, Radosevic testified that the correct answer would be "yes" if the person was convicted and "no" if not convicted. She recalled several instances of applicants attempting to lie on their forms. Radosevic testified that an applicant's successful completion of supervision after a conviction would be considered in the appeal process, that to her knowledge receiving probation in California was not the same as receiving supervision, and that Brown's criminal history indicated that he received probation in California.

¶ 26    The circuit court took the matter under advisement and on May 31, 2018, entered an order setting aside ISP's revocation of Brown's FOID card and ordering ISP to issue a FOID card to Brown. The circuit court indicated in its order that it granted Brown's petition "based on the unique circumstances presented herein, including the fact that guns are lawfully in the home of [Brown], with the approval of the State," and that the California conviction of domestic battery was "disputed by the alleged victim."

¶ 27    ISP appealed, arguing, *inter alia*, that the circuit court erred in granting Brown's petition because Brown was prohibited from possessing a firearm under federal law and did not qualify for an exception to the federal firearm prohibition. 2020 IL App (3d) 180409, ¶ 17. Second, and in the alternative, ISP argued that the circuit court erred in granting Brown's petition because the evidence presented at the hearing showed that Brown was likely to act in a manner dangerous to public safely and that granting Brown relief would be contrary to the public interest. *Id.* Third, and also in the alternative, ISP argued that Brown's as-applied constitutional challenge should not be considered by the appellate court because it was premature, since Brown did not pursue any other available avenues of relief, such as a pardon or expungement of the conviction. *Id.*

¶ 28    Brown responded that the circuit court properly granted his petition and directed ISP to issue him a FOID card because (1) section 10(c)(4) of the FOID Card Act and section 922(g)(9) of the FGCA are unconstitutional as applied to him, (2) he was not required under the law to pursue a pardon or other administrative remedy before bringing his as-applied constitutional challenges, and (3) the circuit court's decision was supported by ample evidence showing that Brown was not likely to

act in a manner dangerous to public safety and that granting the petition would not be contrary to the public interest. *Id.* ¶ 18. Second, and in the alternative, Brown argued that the circuit court properly granted his petition because he was entitled to relief under the FOID Card Act and because granting him relief was not contrary to federal law. *Id.* To that regard, Brown contended that he qualified for an exception to the federal firearm prohibition because the circuit court restored his civil rights by determining that Brown should be allowed to possess firearms. *Id.*

¶ 29 The appellate court concluded that the circuit court erred by granting Brown's petition. *Id.* ¶ 25. It noted that Brown's California conviction qualified as an MCDV and the exception under the FGCA did not apply because the California conviction was never expunged or set aside, Brown was never pardoned for the conviction, and Brown never had his civil rights revoked and restored in California as a result of the conviction. *Id.* ¶ 24. Accordingly, the appellate court reversed the judgment of the circuit court. *Id.* ¶ 28.

¶ 30 The dissenting justice in the appellate court disagreed with the majority's conclusion that Brown's firearm rights were not revoked and restored in California. *Id.* ¶ 31 (Holdridge, J., dissenting). He observed that, under the California Penal Code, a conviction for inflicting corporal injury to a spouse subjected Brown to a firearm prohibition that revoked his eligibility to possess firearms for 10 years from the date of his conviction, specifically, until September 22, 2011. *Id.* ¶ 33 (citing Cal. Penal Code § 12021(c)(1) (West 2001) (now codified as Cal. Penal Code § 29805(a) (West 2012))). Thus, the dissenting justice noted that, after the 10-year revocation period expired, Brown's right to possess a firearm was automatically restored by operation of California law, which demonstrated that, despite Brown's conviction, he was sufficiently trustworthy to possess a firearm. *Id.* Accordingly, the dissenting justice concluded that Brown's firearm rights were, in fact, revoked and restored in California and, accordingly, would affirm the circuit court's judgment. *Id.* This Court allowed Brown's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2019).

¶ 31 ANALYSIS

¶ 32 The issue in this case is whether Brown is eligible for relief under section 10(c) of the FOID Card Act. 430 ILCS 65/10(c) (West 2016). That determination requires

an examination of provisions of the FOID Card Act, the FGCA, and the California Penal Code and how those statutes correlate with one another. Because issues related to the interpretation of statutes present questions of law, our standard of review is *de novo*. *In re Christopher K.*, 217 Ill. 2d 348, 364 (2005).

¶ 33    Section 10(c) of the FOID Card Act provides that the circuit court may grant relief to a petitioner whose FOID card has been revoked, so long as the petitioner satisfies the following four requirements:

"(1) the applicant has not been convicted of a forcible felony under the laws of this State or any other jurisdiction within 20 years of the applicant's application for a [FOID card], or at least 20 years have passed since the end of any period of imprisonment imposed in relation to that conviction;

(2) the circumstances regarding a criminal conviction, where applicable, the applicant's criminal history[,] and his reputation are such that the applicant will not be likely to act in a manner dangerous to public safety;

(3) granting relief would not be contrary to the public interest; and

(4) granting relief would not be contrary to federal law." 430 ILCS 65/10(c)(1)-(4) (West 2016).

¶ 34    Brown asserts that the evidence presented at the hearing established that the first three requirements of section 10(c) were satisfied and the circuit court implicitly found the same by granting his petition and ordering ISP to issue him a FOID card. *Id.* § 10(c)(1)-(3). Accordingly, Brown contends that the sole issue in dispute is whether granting him a FOID card would be contrary to federal law, pursuant to the fourth requirement of section 10(c). *Id.* § 10(c)(4).

¶ 35    The applicable federal law is section 922(g)(9) of the FGCA, which provides, in relevant part:

"(g) It shall be unlawful for any person—

\* \* \*

(9) who has been convicted in any court of [an MCDV], to ship or transport in interstate or foreign commerce, or possess in or affecting

commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(9) (2012).

The FGCA defines an MCDV as "a misdemeanor under Federal, State, or Tribal law" that "has, as an element, the use or attempted use of physical force *** committed by a current or former spouse." *Id.* § 921(a)(33)(A)(i)-(ii).

¶ 36    Here, the parties do not dispute that Brown's California conviction constitutes an MCDV, which makes him subject to the federal firearm prohibitor in section 922(g)(9) of the FGCA. *Id.* § 922(g)(9). At issue is whether Brown satisfied an exception to that prohibitor as provided in section 921(a)(33)(B)(ii) of the FGCA:

"A person shall not be considered to have been convicted of such an offense for purposes of this chapter if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." *Id.* § 921(a)(33)(B)(ii).

¶ 37    Here, Brown testified that his conviction was not expunged, set aside, or pardoned. Accordingly, we must determine whether the exception to the firearm prohibitor applies as a result of Brown having his civil rights restored. Brown argues that he satisfied the exception to the firearm prohibitor by having his civil rights restored by virtue of California law, which automatically allows misdemeanants to possess firearms 10 years after the qualifying conviction. To support his argument, Brown cites section 29805(a) of the California Penal Code, which provides:

"[A]ny person who has been convicted of a misdemeanor violation of Section *** 273.5 *** and who, within 10 years of the conviction, owns, purchases, receives, or has in possession or under custody or control, any firearm is guilty of a public offense, punishable by imprisonment in a county jail not exceeding one year or in the state prison, by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine." Cal. Penal Code § 29805(a) (West 2012).

¶ 38    Applied here, Brown asserts that his conviction for inflicting corporal injury to a spouse subjected him to section 29805(a) of the California Penal Code, which revoked his eligibility to possess firearms for 10 years after the date of his conviction, until September 22, 2011, when his right to possess firearms was automatically restored pursuant to that section. See *id.* Accordingly, Brown contends that he met the "civil rights restored" exception to the firearm prohibitor as set forth in the FGCA. See 18 U.S.C. § 921(a)(33)(B)(ii) (2012).

¶ 39    ISP maintains that the appellate court correctly held that Brown does not qualify for the "civil rights restored" exception because, under the governing law of California as the convicting jurisdiction, Brown never had his civil rights revoked and restored as a result of his MCDV conviction. Citing *Logan v. United States*, 552 U.S. 23, 28 (2007), ISP asserts that, if no civil rights are revoked, there is nothing to restore and the federal firearm prohibitor remains. ISP further notes that, because California is the convicting jurisdiction, its law governs whether civil rights have been restored. See *Johnson v. Department of State Police*, 2020 IL 124213, ¶ 26. ISP cites *Enos v. Holder*, 855 F. Supp. 2d 1088, 1094-95 (E.D. Cal. 2012), which rejected the argument by individuals with MCDVs that the right to possess firearms should be included in the formulation of "civil rights" in section 921(a)(33)(B)(ii) of the FGCA. ISP further cites *United States v. Chovan*, 735 F.3d 1127, 1132 (9th Cir. 2013), which held that, under California law, individuals with MCDV convictions do not lose their civil rights, which California defines as the rights to vote, to hold public office, and to serve on a jury. ISP asserts that, as a misdemeanant, Brown did not lose those civil rights. Accordingly, ISP contends that, because Brown did not have his civil rights revoked under California law, there is nothing to restore to him and he cannot obtain relief in Illinois from the federal firearm prohibitor under the "civil rights restored" exception. We disagree.

¶ 40    The issue of whether firearm rights are civil rights for purposes of federal law was resolved in *Johnson*, 2020 IL 124213, ¶ 51, in which this court unanimously concluded that restoration of firearm rights under the FOID Card Act constitutes "civil rights restored" for purposes of federal law. In *Johnson*, the petitioner's FOID card was revoked because of an MCDV. *Id.* ¶ 1. Johnson petitioned the circuit court, seeking restoration of her firearm rights under section 10 of the FOID Card Act. *Id.* ¶ 6. After an evidentiary hearing, the circuit court determined that Johnson satisfied the first three requirements of section 10(c) but that she was prohibited

- 13 -

from obtaining a FOID card under section 10(c)(4) because the MCDV conviction was a federal firearm prohibitor. *Id.* ¶ 9. However, because of the perpetual denial of Johnson's right to possess firearms, the circuit court concluded that substantial justice had not been done, declared portions of the FGCA and the FOID Card Act unconstitutional as applied to Johnson, and ordered the Director of State Police to issue her a FOID card. *Id.* ¶ 10. The Department of State Police appealed directly to this court. *Id.*

¶ 41       On appeal, this court observed the principle of constitutional avoidance and first considered whether the federal firearm prohibitor applied to Johnson. *Id.* ¶¶ 12-13. To resolve that issue, this court examined the "civil rights restored" exception *Id.* ¶¶ 23-24. Citing *Logan*, 552 U.S. at 28, this court noted that civil rights under section 921(a)(33)(B)(ii) of the FGCA have historically included the right to vote, the right to serve on a jury, and the right to hold public office. *Johnson*, 2020 IL 124213, ¶ 28. Johnson did not lose any of those civil rights because she was convicted of a misdemeanor and was not sentenced to incarceration. *Id.* ¶ 29. However, this court determined that restricting civil rights to include only the rights to vote, to hold public office, and to serve on a jury was untenable in light of *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), and concluded that the right to possess firearms should also be considered "civil rights" under section 921(a)(33)(B)(ii) of the FGCA. *Johnson*, 2020 IL 124213, ¶ 30.

¶ 42       In so concluding, this court noted that "civil rights" include " 'the rights secured to citizens of the U.S. by the *** 14th amendment[ ] to the constitution.' " *Id.* ¶ 37 (quoting Webster's Third New International Dictionary 413 (1993)). Accordingly, the plain and ordinary meaning of "civil rights" would include firearm rights. *Id.* This court further noted that the language of the FGCA supported the conclusion that firearm rights are included in "civil rights" because the phrase "civil rights restored" appear together with the words "expunged," "set aside," and "pardoned." *Id.* ¶ 39. This court emphasized that in *Logan* the United States Supreme Court indicated that these terms describe " 'a measure by which the government relieves an offender of some or all of the consequences of his conviction.' " *Id.* (quoting *Logan*, 552 U.S. at 32). This court asserted that restoration of firearm rights under section 10(c)(1)-(3) of the FOID Card Act "similarly relieves an offender of some of the consequences of a conviction and extends a measure of forgiveness by

finding *** that the offender no longer poses a risk to public safety." *Id.* ¶ 40. Finally, this court observed that including firearm rights as "civil rights" comports with the purpose of the FGCA because a "state regulatory scheme that restores a person's eligibility for firearm rights by affirmatively and expressly evaluating that person's future dangerousness *** is entirely consistent with the trustworthiness rationale that underpins the 'civil rights restored' provision." *Id.* ¶ 41. This court emphasized that disregarding the "express and measured finding under a section 10 hearing that an individual no longer poses a risk to public safety would frustrate the very legislative purpose underlying the federal statute." *Id.* ¶ 43.

¶ 43      This court acknowledged that the "civil rights restored" exception has been construed to apply only to someone who lost her civil rights in the first place. *Id.* ¶ 45. This court determined that Johnson met that test by losing her eligibility to obtain a FOID card, and thus her right to possess firearms, because of her MCDV conviction and as part of her sentence she was statutorily required to " 'refrain from possessing a firearm or other dangerous weapon.' " *Id.* ¶ 47 (quoting 730 ILCS 5/5-6-3(a)(3) (West 2000)). Johnson's firearm rights were subsequently restored under Illinois's regulatory scheme, which this court referenced as section 10(c)(1)-(3) of the FOID Card Act. *Id.* This court acknowledged that in *Enos*, 855 F. Supp. 2d 1088, one federal court post-*Heller* declined to find restoration of firearm rights was included in the "civil rights restored" exception but found that the *Enos* decision was not well reasoned. *Johnson*, 2020 IL 124213, ¶ 48. The *Johnson* court emphasized that its holding was congruent with other state courts that have found firearm rights to be civil rights under the FGCA. *Id.* ¶¶ 38, 49 (citing *Ferguson v. Perry*, 740 S.E.2d 598, 604 (Ga. 2013), and *DuPont v. Nashua Police Department*, 113 A.3d 239, 249-50 (N.H. 2015)). This court concluded that, because Johnson satisfied her burden under section 10(c)(1)-(3), granting her relief would not be contrary to federal law under section 10(c)(4). *Id.* ¶ 51.

¶ 44      Here, although Brown received his MCDV conviction in California and the petitioner in *Johnson* received her MCDV in Illinois, Brown nonetheless satisfied the test for the "civil rights restored" exception because he lost his right to possess firearms under California law due to his MCDV conviction and those rights were subsequently automatically restored by virtue of California law 10 years after his conviction. See *id.* ¶ 47; Cal. Penal Code § 29805(a) (West 2012). As noted, this court established that the right to possess firearms is considered a "civil right" under

- 15 -

the "civil rights restored" exception set forth in the FGCA. *Johnson*, 2020 IL 124213, ¶ 30. ISP aptly argues that California law governs whether Brown's civil rights have been restored (see *id.* ¶ 26) and that California does not recognize firearm possession as a civil right. However, we emphasized in *Johnson* that "[t]he law of the convicting jurisdiction controls whether civil rights have been restored [citation] because 'Congress sought to accommodate a state's judgment that a particular person *** is, despite a prior conviction, sufficiently trustworthy to possess firearms.' " *Id.* (quoting *McGrath v. United States*, 60 F.3d 1005, 1009 (2d Cir. 1995)). Thus, the "civil rights restored" provision "queries whether an offender's legal status has been altered by a state's dispensation of forgiveness." *Id.* (citing *Logan*, 552 U.S. at 26).

¶ 45        Here, in examining the law of California as the convicting jurisdiction, Brown's legal status was altered by a dispensation of forgiveness because his MCDV conviction rendered him ineligible to possess firearms there for 10 years until his legal status changed on September 22, 2011, when his right to possess firearms was restored, notwithstanding his former MCDV conviction. See *id.*; see also Cal. Penal Code § 29805(a) (West 2012). Accordingly, as of September 22, 2011, the state of California deemed Brown sufficiently trustworthy to possess firearms despite his prior conviction (*Johnson*, 2020 IL 124213, ¶ 26), and if Brown lived in California today, he would not be prosecuted if he possessed firearms there. See Cal. Penal Code § 29805(a) (West 2012).

¶ 46        ISP insisted at oral argument that section 29805(a) of the California Penal Code is not a substitute for an affirmative statement of restoration and forgiveness that this court in *Johnson* noted was so important. ISP explained that section 29805(a) is a matter of state law *forbearance*, not *forgiveness*, as it allows an individual not to be prosecuted for possessing firearms as a matter of prosecutorial discretion but it does not grant the dispensation of forgiveness that this court spoke of in *Johnson*. ISP contends that, for Brown to achieve that level of dispensation of forgiveness in California, he would have to pursue a gubernatorial pardon of the MCDV conviction. Cal. Const., art. V, § 8(a). We disagree.

¶ 47        Nowhere in *Johnson* did this court decree that an affirmative statement of restoration and forgiveness is required. Rather, the relevant inquiry under the "civil rights restored" provision is whether Brown's legal status was altered by a

dispensation of forgiveness in California. See *Johnson*, 2020 IL 124213, ¶ 26. We answer that inquiry in the affirmative, as Brown's legal status was altered by a dispensation of forgiveness when Brown's right to possess firearms was automatically restored by operation of law (see Cal. Penal Code § 29805(a) (West 2012)). It would only be necessary for Brown to seek a pardon from the MCDV conviction if the prohibition against firearm possession were still in effect. See *id.* However, on September 22, 2011—10 years after Brown's conviction—the firearm prohibition expired, making a pardon no longer necessary, as Brown's right to possess firearms in California was automatically restored on that date and the conviction no longer had any bearing on that right. See *id.*

¶ 48 We further emphasize that California law does not apply to Brown in a vacuum. The fact that California has not categorized firearm possession as a civil right does not negate the fact that Brown, an Illinois citizen who is subject to Illinois law, had his right to possess firearms revoked under the FOID Card Act and brought his petition in the circuit court of Putnam County, Illinois, seeking to have his right to possess firearms restored under the FOID Card Act. Moreover, as an Illinois citizen, Brown is subject to this court's holding in *Johnson* that restoration of firearm rights under the FOID Card Act constitutes "civil rights restored" for purposes of federal law. See 2020 IL 124213, ¶ 51. While we look to California law as the convicting jurisdiction to determine whether civil rights have been restored, we apply Illinois law to conclude that granting Brown relief under the FOID Card Act is consistent with federal law because his right to possess firearms in California was a civil right that was revoked and later restored by operation of California law. See *id.* Accordingly, we conclude that the "civil rights restored" exception to the federal firearm prohibitor applies to Brown and the fourth requirement of section 10(c) of the FOID Card Act is satisfied, as granting Brown relief is not contrary to federal law. 430 ILCS 65/10(c)(4) (West 2016).

¶ 49 In the alternative, ISP argues that, if this court finds that Brown satisfied the fourth requirement under section 10(c) of the FOID Card Act, the appellate court's judgment should be affirmed because Brown failed to satisfy the second and third requirements of section 10(c). *Id.* § 10(c)(2)-(3). Because the FOID Card Act affords the circuit court discretion to determine whether a petitioner has met the burden of satisfying the requirements of section 10(c), we review this issue under the abuse of discretion standard. See *Evans v. Cook County State's Attorney*, 2021

IL 125513, ¶ 41. An abuse of discretion occurs only when the circuit court's ruling is arbitrary or fanciful or when no reasonable person would adopt the view of the circuit court. *Seymour v. Collins*, 2015 IL 118432, ¶ 41.

¶ 50    The second requirement of section 10(c) of the FOID Card Act provides that the circuit court may grant relief so long as the petitioner establishes that "the circumstances regarding a criminal conviction, where applicable, the applicant's criminal history[,] and his reputation are such that the applicant will not be likely to act in a manner dangerous to public safety." 430 ILCS 65/10(c)(2) (West 2016). ISP argues that the record indicates that Brown is likely to act in a manner dangerous to public safety if his FOID card is restored. In support, ISP points not only to Brown's MCDV conviction in California but also to his 1988 conviction in Minnesota for fifth-degree assault, his 2005 arrest for DUI in Bureau County, and his 2005 arrest for battery in La Salle County. ISP contends that Brown's criminal history shows that he tends "to make poor choices and often resorts to aggression that places others in harm's way." Accordingly, ISP maintains that Brown failed to satisfy the second requirement of section 10(c). We hold that the trial court's conclusion to the contrary was not an abuse of discretion.

¶ 51    Brown's MCDV conviction involved only his former wife, Suzie. Suzie's letter in evidence indicated that no weapon was involved in the incident, she was not injured, nor did she believe that Brown intended to injure her. Brown testified to the same. Brown's conviction for fifth-degree assault occurred in Minnesota in 1988, when Brown was a minor. While the conviction is not insignificant, it nonetheless occurred during Brown's youth. Likewise, Brown's 2005 DUI arrest was an isolated incident. Regarding the 2005 arrest for battery, Brown testified that he was defending himself in a bar fight and the charges were dropped.

¶ 52    Moreover, the evidence relevant to Brown's reputation establishes that he would *not* be likely to behave in a manner that is dangerous to public safety if his FOID card were restored to him. Brown has maintained steady employment for many years as a truck driver without incident and is authorized to transport hazardous materials. His former wife, Suzie, stated in her letter that after the incident in California she did not feel threatened by Brown possessing firearms and that Brown was not a danger to others by possessing firearms. Brown has not been involved in any occurrences of domestic violence besides the California incident.

Brown's current wife, Kari, testified that Brown has always been safe, that he always kept the firearms locked up, that he was always cautious with firearms, and that there was no reason to believe that he would be a danger to public safety if his FOID card were restored to him. Brown testified that he received his first firearm and took a safety course when he was 16 years old and that he never used a firearm in a manner that was dangerous to himself or others. A letter in evidence from the Putnam County sheriff indicated that Brown had no criminal history in Putnam County for the last seven years.

¶ 53 Again, our sole task is to determine whether the trial court's decision was arbitrary, fanciful, or one that no reasonable person would make. Not only was the trial court's decision not arbitrary, fanciful, or one that no reasonable person would make, it was well supported by the evidence. Accordingly, we find that the circuit court did not abuse its discretion in determining that Brown satisfied the second requirement of section 10(c), and we reject ISP's argument to the contrary.

¶ 54 ISP's next alternative argument is that Brown failed to satisfy the third requirement of section 10(c) of the FOID Card Act, which provides that the circuit court may grant relief so long as the petitioner establishes that "granting relief would not be contrary to the public interest." *Id.* § 10(c)(3). ISP stresses that Brown misrepresented his criminal history on his FOID card application and that the public has a vested interest in ensuring that those who are not entitled to possess firearms are not allowed to do so in Illinois. To support this principle, ISP cites the legislative declaration in the FOID Card Act, which provides:

> "that in order to promote and protect the health, safety[,] and welfare of the public, it is necessary and in the public interest to provide a system of identifying persons who are not qualified to acquire or possess firearms *** within the State of Illinois by the establishment of a system of [FOID c]ards." *Id.* § 1.

¶ 55 ISP emphasizes that, for it to determine who may possess a firearm, applicants must be forthright and honest on their FOID card applications. ISP cites section 14(d-5) of the FOID Card Act, which states that it is a Class 2 felony to provide a false statement on a FOID card application (*id.* § 14(d-5)), and section 8(h), which allows ISP to revoke a FOID card application if the applicant provides a false statement (*id.* § 8(h)). ISP contends that Brown's false statement on his FOID card

application is relevant in determining whether issuing him a FOID card would be in the public interest and that Brown acted contrary to the public interest by concealing his MCDV conviction on his application, although he knew the conviction involved elements of domestic battery. ISP further notes that, because of Brown's misrepresentation, he was able to illegitimately possess a FOID card undetected for several years. ISP concludes by asserting Brown failed to satisfy the third requirement of section 10(c) because he betrayed the public interest by possessing a FOID card when he was not entitled to one.

¶ 56 Brown responds that he was under the impression that the charge in California was disposed of with court supervision and that, if he completed his sentence without incident, that was the last he would hear of the matter. Although Brown conceded at the hearing that he indicated on his 2013 FOID card application that he had never been convicted of domestic battery or a substantially similar offense, he testified that he was not trying to deny that something happened but that he believed at the outset that he would only receive court supervision and he did not discover until later that he was actually convicted. He testified that "we went on, I did my stuff, went back to court. Everything was fine. And that's *** the last I heard about it." He further indicated that he was not advised that accepting the plea offer would affect his firearm rights in any way.

¶ 57 Radosevic testified at the hearing that applicants sometimes attempt to lie on their FOID card applications. She added that Brown's application was incorrect and that consequences for providing false information on a FOID card application may include perjury charges, which would constitute a felony if convicted. Radosevic testified that, to her knowledge, receiving probation in California was different from receiving supervision and that Brown received probation in California. Accordingly, Radosevic concluded that Brown checked the box "no" in response to the subject question when the answer should have been "yes" due to the California conviction.

¶ 58 Brown's testimony regarding his subjective intent and understanding of the question in relation to the California incident is unrebutted, and the trial court could reasonably credit it. Accordingly, we find the circuit court did not abuse its discretion in finding that granting Brown relief would not be contrary to the public interest. We conclude that Brown was entitled to relief, as he satisfied all four

requirements of section 10(c) of the FOID Card Act. *Id.* § 10(c). Given this determination, we need not address Brown's constitutional claims.

¶ 59                                        CONCLUSION

¶ 60        For the foregoing reasons, we hold that granting Brown relief under section 10(c) of the FOID Card Act would not be contrary to federal law and that Brown satisfied all the requirements of section 10(c). *Id.* § 10(c)(1)-(4). Accordingly, we reverse the judgment of the appellate court and affirm the judgment of the circuit court directing ISP to issue a FOID card to Brown.

¶ 61        Appellate court judgment reversed.

¶ 62        Circuit court judgment affirmed.

¶ 63        JUSTICE CARTER took no part in the consideration or decision of this case.